UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
MICHAEL BINDAY,                             :        **AFFIRMATION**
       *Petitioner*,                         :
                                            :        Docket No. 21-1206
    - v. -                                :
                                            :
UNITED STATES OF AMERICA,                   :
       *Respondent*.                        :
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

STATE OF NEW YORK          )
COUNTY OF NEW YORK      :    ss.:
SOUTHERN DISTRICT OF NEW YORK  )

      CONNIE DANG, pursuant to 28 U.S.C. § 1746, hereby affirms under penalty of perjury:

      1.    I am an Assistant United States Attorney in the Office of Damian Williams, United States Attorney for the Southern District of New York, and I represent the Government in this proceeding. I submit this affirmation in opposition to petitioner Michael Binday's motion for bail pending the resolution of his application for leave to file a second or successive motion pursuant to 28 U.S.C. § 2255.[1]

---

[1] On June 6, 2023, this Court granted the Government's motion to extend the time, to June 19, 2023, to oppose Binday's bail motion. The Government's motion

## STATEMENT OF FACTS

**A.    Offense Conduct**

2.    Beginning in 2006, Binday organized a conspiracy to fraudulently broker "stranger-oriented life insurance" ("STOLI") policies to insurance companies. *United States v. Binday*, 804 F.3d 558, 565-66 (2d Cir. 2015).[2]

3.    "A STOLI policy is one obtained by the insured for the purpose of resale to an investor with no insurable interest in the life of the insured—essentially, it is a bet on a stranger's life." *Id.* at 565. STOLI policies became popular investment vehicles shortly before Binday's scheme began, as a mechanism for hedge funds and others to bet that the value of a policy's death benefits would exceed the value of the required premium payments. *Id.* In response to the popularity of STOLI policies, many insurance companies adopted rules against issuing STOLI policies and took steps to detect them. *Id.*

4.    In 2006, Binday organized a group of insurance brokers to assist in fraudulently brokering STOLI policies. *Id.* at 566. Insurance brokers such as Binday received commissions from insurers for life insurance policies that they brokered,

---

inadvertently failed to account for the June 19 holiday, but the Government understands the deadline was extended to June 20 by operation of Federal Rule of Appellate Procedure 26. To the extent it was incorrect, the Government requests this opposition be accepted out-of-time.

[2] Unless otherwise noted, quotations omit internal quotation marks, citations, alterations, and footnotes.

and, accordingly, "had a financial incentive to place STOLI policies by disguising them to the insurer as non-STOLI policies." *Id.* at 565-66.

5. Binday and his co-conspirators recruited older persons of modest means as "straw buyers" of the STOLI policies. *Id.* at 566. The straw buyers were recruited by promises of six-figure payments once policies were sold, which Binday only sometimes honored. *Id.* Once a straw buyer was recruited, Binday arranged for necessary medical tests and submitted them to multiple insurers to determine which "risk class" the straw buyer would fall into. *Id.* Binday also submitted the medical records to companies that prepare reports estimating life expectancies. Binday then marketed insurance policies to potential STOLI investors that projected the estimated costs of premiums until the straw buyers' projected deaths. *Id.*

6. While the health and age information Binday submitted to the insurance companies for the straw buyers was accurate, much of the other information was not. Binday had straw buyers sign blank applications, and then supplied false financial information—supported by fraudulent documentation—vastly inflating the wealth of each straw buyer. *Id.* at 566-67. Binday also lied on application questions aimed at detecting STOLI policies, including the purpose of the policy, how premiums would be paid, and whether the applicant had discussed selling the policy. *Id.* at 567. Binday further falsely certified to the insurers that the premiums would not be paid

by financing from third parties and that there was no agreement to transfer ownership of the policy. *Id.*

7.     Binday submitted at least 92 fraudulent applications, resulting in the issuance of 74 STOLI policies with a total face value of over $100 million, and generating brokerage commissions of approximately $11.7 million. *Id.*

## B.     Indictment, Trial, and Sentencing

8.     Indictment 12 Cr. 152 (CM) (the "Indictment") was filed on February 15, 2012 in five counts, four of which named Binday. (Dkt. 1).[3] Count One charged Binday with participating in a conspiracy to commit mail fraud and wire fraud, in violation of 18 U.S.C. § 1349. Count Two charged Binday with mail fraud, in violation of 18 U.S.C. § 1341. Count Three charged Binday with wire fraud, in violation of 18 U.S.C. § 1343. Count Five charged Binday with obstruction of justice, in violation of 18 U.S.C. § 1512(c), but was dismissed prior to trial. *Binday*, 804 F.3d at 567.

9.     Trial against Binday and two co-defendants commenced in September 2013. On October 7, 2013, the jury found Binday guilty of Counts One, Two, and Three of the Indictment. *Id.* at 569.

---

[3] Unless otherwise specified, "Dkt." refers to an entry in District Court docket number 12 Cr. 152 (CM).

10.    On July 30, 2014, the Honorable Colleen McMahon, United States District Judge, sentenced Binday principally to 144 months' imprisonment, to be followed by three years' supervised release. Judgment was entered on July 31, 2014.

## C.    Direct Appeal

11.    On October 26, 2015, this Court affirmed Binday's convictions. Binday and his co-defendants "argue[d] primarily that the government did not prove that they contemplated harm to the insurers that is cognizable under the mail and wire fraud statutes." *Id.* at 565. That argument took the form of challenges to the sufficiency of the evidence and the jury charge, as well as a constructive amendment claim. *Id.* The Court rejected each of the defendants' arguments that the Government failed to prove cognizable contemplated harm. *Id.* at 572-85. With one limited exception, the Court also affirmed Binday's sentence. *Id.* at 595-99.[4]

12.    Binday petitioned for rehearing en banc. Citing *Skilling v. United States*, 561 U.S. 358 (2010), *Cleveland v. United States*, 531 U.S. 12 (2000), and *Sekhar v. United States*, 570 U.S. 729 (2013), none of which he had mentioned in his merits briefs filed in 2014 and 2015, Binday argued that rehearing was warranted because this Court's right-to-control jurisprudence had been "thoroughly undermined, if not outright repudiated by, intervening Supreme Court decisions."

---

[4] On consent of the parties, the Court remanded for the limited purpose of entering a restitution amount. *Binday*, 804 F.3d at 601.

(No. 14-2809(L), Dkt. 181 at 1). On December 14, 2015, this Court denied Binday's rehearing petition. (No. 14-2809(L), Dkt. 189). On June 20, 2016, the Supreme Court denied Binday's petition for a writ of certiorari, which was likewise based largely on *Skilling*, *Cleveland*, and *Sekhar*. *Binday v. United States*, 136 S. Ct. 2487 (2016).

**D.      Motion for New Trial**

13.     On October 6, 2016, Binday filed in the District Court, pursuant to Federal Rule of Criminal Procedure 33(b)(1), a motion for a new trial based on alleged newly discovered evidence. (Dkt. 394). On August 29, 2017, Judge McMahon denied the motion. (Dkt. 431).

**E.      First Section 2255 Motion**

14.     On June 20, 2017, Binday filed a Section 2255 motion raising several ineffective assistance of counsel claims relating to issues of intent, materiality, economic harm, the defendant's decision not to testify, and loss calculations at sentencing. (Dkt. 420). On May 23, 2018, Judge McMahon denied the motion, rejecting the ineffective assistance claims as meritless, and declined to issue a certificate of appealability. (Dkt. 448). On January 15, 2019, this Court denied Binday's motion for a certificate of appealability. (No. 18-2143, Dkt. 45). On May 6, 2019, this Court denied Binday's motion for reconsideration. (No. 18-2143,

Dkt. 80). On February 24, 2020, the Supreme Court denied Binday's petition for a writ of certiorari. *Binday v. United States*, 140 S. Ct. 1105 (2020).[5]

## F.    Second Section 2255 Motion

15.    On March 12, 2021, Binday filed in the District Court a motion styled under 28 U.S.C. §§ 2255 and 2241, arguing that his convictions were invalid in light of *Kelly v. United States*, 140 S. Ct. 1565 (2020). (Dkt. 479). On May 5, 2021, Judge McMahon transferred Binday's motion to this Court. (Dkt. 489). On October 12, 2021, this Court denied Binday's request for leave to file a motion under § 2255 or a petition under § 2241, writing:

> To the extent Petitioner's claim should be brought under § 2255, it would be successive within the meaning of § 2255(h) because Petitioner's first § 2255 motion challenged the same criminal judgment, was decided on the merits, and reached final adjudication before the filing of the present motion. *See Vu v. United States*, 648 F.3d 111, 113 (2d Cir. 2011); *Whab v. United States*, 408 F.3d 116, 118-19 (2d Cir. 2005). We reject Petitioner's argument that a claim based on *Kelly v. United States*, 140 S. Ct. 1565 (2020), would not be successive because that decision announced new law that was previously unavailable; § 2255(h) clearly covers that circumstance and the cases cited by Petitioner are inapposite. Petitioner is not entitled to relief under § 2255(h) because he has not made a prima facie showing that *Kelly* announced "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," as required by § 2255(h)(2). *Kelly* interpreted a statute and did not rely on any constitutional provision.

---

[5] On May 5, 2020, Binday filed in the District Court a motion for reduction of sentence pursuant to 18 U.S.C. § 3582(c), arguing that he should be released from prison because of the COVID-19 pandemic. (Dkt. 464). On July 16, 2020, Judge McMahon denied the motion. (Dkt. 475).

Petitioner also has not made a showing that he is entitled to relief under § 2241 because he has not made a showing of actual innocence. *See Cephas v. Nash*, 328 F.3d 98, 104 (2d Cir. 2003) (stating standard for proceeding under § 2241 instead of § 2255); *Triestman v. United States*, 124 F.3d 361, 373–74 (2d Cir. 1997) (same). This Court has recently upheld the theory of conviction challenged by Petitioner, *United States v. Gatto*, 986 F.3d 104, 125–27 (2d Cir. 2021), *petition for cert. filed*, No. 21-169 (Aug. 2, 2021), and he has not otherwise shown that his case is covered by the ruling in *Kelly*.

(No. 21-1206, Dkt. 46).

16.     On March 10, 2022, Binday filed a petition for a writ of certiorari in the Supreme Court. On September 21, 2022, the Government requested that the Supreme Court "hold the petition for a writ of certiorari pending its decisions in [*Ciminelli v. United States*, No. 21-1170 and *Jones v. Hendrix*, No. 21-857] and then dispose of the petition as appropriate." (Mem. for the United States at 2, S. Ct. No. 21-1241).

17.     On November 29, 2022, Binday filed in the Supreme Court an application for bail pending resolution of his certiorari petition. On December 10, 2022, Justice Sotomayor denied the bail application.

18.     On May 11, 2023, the Supreme Court issued a decision in *Ciminelli*. On May 23, 2023, the Supreme Court granted Binday's certiorari petition, vacated this Court's judgment, and remanded the case to this Court for further consideration in light of *Ciminelli*. (No. 21-1206, Dkt. 57).

19.    On June 2, 2023, Binday filed the instant motion for bail pending resolution of his application for leave to file a second or successive § 2255 motion. (No. 21-1206, Dkt. 59).

20.    Binday is currently on home confinement with electronic monitoring. He will complete his 144-month sentence of incarceration on or about September 20, 2025, after which he will begin a term of three years' supervised release.

## ARGUMENT

## THE COURT SHOULD DENY BINDAY'S BAIL MOTION

21.    This Court should deny Binday's motion for bail pending resolution of his application for leave to file a second or successive § 2255 motion because he fails to meet the demanding standard for bail pending habeas. First, Binday fails to demonstrate a high probability of success on the merits. Binday's proposed motion fails to meet the gatekeeping requirements for a second or successive § 2255 motion because *Ciminelli* is a statutory ruling rather than a new rule of constitutional law. Binday's proposed motion also fails to meet the requirements for a § 2241 petition because Binday cannot establish actual innocence given that his scheme to defraud was designed to obtain money, which the fraud statutes continue to reach after *Ciminelli*. Finally, even if Binday could establish a high probability of success on the merits, release would not be warranted because being subject to home confinement under a potentially invalid conviction is not an extraordinary

9

circumstance that makes the grant of bail necessary to make the habeas remedy effective.

## A. Applicable Law

22. A habeas petitioner collaterally attacking a final criminal conviction has a "limited liberty interest . . . as opposed to that of a defendant prior to trial or even on direct appeal." *Grune v. Coughlin*, 913 F.2d 41, 44 (2d Cir. 1990). At the same time, "[b]ecause of the conviction, the Government has a justified interest in petitioner's continued incarceration, and petitioner has the burden of showing special reasons why bail is warranted." *Iuteri v. Nardoza*, 662 F.2d 159, 161 (2d Cir. 1981). Thus, the power to grant bail to habeas petitioners "is a limited one, to be exercised in special cases only." *Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001); *see also Dotson v. Clark*, 900 F.2d 77, 79 (6th Cir. 1990) ("There will be few occasions where a prisoner will meet this standard."); *Martin v. Solem*, 801 F.2d 324, 329 (8th Cir. 1986) ("Habeas petitioners are rarely granted release on bail pending disposition or pending appeal."); *Glynn v. Donnelly*, 470 F.2d 95, 98 (1st Cir. 1972) (holding that habeas petitioners face "a formidable barrier" to obtaining bail).

23. "The standard for bail pending habeas litigation is a difficult one to meet: The petitioner must demonstrate that the habeas petition raise[s] substantial claims and that extraordinary circumstances exist[] that make the grant of bail

necessary to make the habeas remedy effective." *Grune*, 913 F.2d at 44 (alterations in original); *accord Mapp*, 241 F.3d at 226; *see also Illaramendi v. United States*, 906 F.3d 268, 271 (2d Cir. 2018) (applying this standard in appeal of denial of bail in Section 2255 proceeding). Notably, this standard "is higher even than that created by 18 U.S.C. § 3143(b), which governs bail pending appeal and requires detention absent a finding, among other things, that the appeal is 'likely to result in' reversal, an order for a new trial, or a new sentence that is less than the time already served." *United States v. Manson*, 788 F. App'x 30, 32 (2d Cir. 2019). Thus, "[b]ail is appropriate pending a decision in a habeas case only when the petitioner has raised substantial constitutional claims upon which he has a *high probability of success*." *Mapp*, 241 F.3d at 226 n.5 (emphasis added); *accord Fan v. United States*, 710 F. App'x 23, 24 n.1 (2d Cir. 2018); *Manson*, 788 F. App'x at 32 (habeas petitioner seeking bail "will have to show that he is *very likely to succeed*" on the merits (emphasis added)). Moreover, a petitioner cannot satisfy the "extraordinary circumstances" requirement by claiming that his continued incarceration will be "without basis," as "[v]irtually all habeas corpus petitioners argue that their confinement is unlawful." *Iuteri*, 662 F.2d at 162.[6]

---

[6] As this Court has observed, a prisoner who has filed an application for permission to file a second or successive Section 2255 motion "is presently seeking permission to file a habeas petition" and does not have a Section 2255 motion pending; thus, "it is not clear whether he is eligible for bail pending habeas litigation." *Wall v. United States*, 619 F.3d 152, 155 n.4 (2d Cir. 2010). The Court need not decide this open

**B.**     **Binday Fails to Meet the Demanding Standard for Bail Pending Habeas**

**1.**     **Binday Fails to Show a High Probability of Success on the Merits**

**a.**     **Binday Fails to Meet the Gatekeeping Requirements for a Second or Successive § 2255 Motion**

24.     Federal prisoners "who seek to collaterally attack the basis for imposing a sentence," including by "challeng[ing] . . . the underlying conviction," generally "must move 'to vacate, set aside or correct the sentence' under 28 U.S.C. § 2255(a)." *Dhinsa v. Krueger*, 917 F.3d 70, 81 (2d Cir. 2019). Binday's proposed motion challenges his convictions and thus falls within the ambit of Section 2255.

25.     Binday filed a Section 2255 motion in 2017 challenging his convictions on grounds of ineffective assistance of counsel. "Generally, to be successive, a second § 2255 motion must attack the same judgment that was attacked in the prior motion, and the prior motion must have been decided on the merits." *Vu v. United States*, 648 F.3d 111, 113 (2d Cir. 2011); *see also Thai v. United States*, 391 F.3d 491, 494 (2d Cir. 2004) ("This Court has often stated that an initial petition will 'count' where it has been adjudicated on the merits or dismissed with prejudice."). Binday's proposed motion attacks the same judgment as the prior Section 2255 motion, which Judge McMahon denied on the merits. (Dkt. 448). The proposed motion is therefore "second or successive" as defined by 28 U.S.C. §§ 2255(h) and

---

question, however, as Binday does not meet the standard for bail pending habeas in any event.

2244(b)(3)(A). As this Court previously held, Binday's proposed motion "would be successive within the meaning of § 2255(h) because [his] first § 2255 motion challenged the same criminal judgment, was decided on the merits, and reached final adjudication before the filing of the present motion." (No. 21-1206, Dkt. 46).

26.     Citing *Panetti v. Quarterman*, 551 U.S. 930 (2007), Binday argues that his proposed motion is not "second or successive" because his claim based on *Ciminelli* was not "ripe" at the time that he filed his first Section 2255 motion. (Mot. 8 n.1). But *Panetti* concerned a defendant's claim that he was incompetent to be executed, a claim that is "not ripe" at the time of a first habeas petition if there is "no early sign of mental illness." 551 U.S. at 943. The Supreme Court stressed that claims of incompetency to be executed present "particular circumstances" and that the Court itself had "confirmed that claims of incompetency to be executed remain unripe at early stages of the proceedings." *Id.* at 945, 947. Furthermore, the Court reaffirmed that "[i]n the usual case, a petition filed second in time and not otherwise permitted by the terms of § 2244 will not survive AEDPA's 'second or successive' bar." *Id.* at 947. Nothing in *Panetti* disturbs settled precedent that motions are considered second or successive notwithstanding petitioners' reliance on intervening Supreme Court decisions. *See Mata v. United States*, 969 F.3d 91, 93 (2d Cir. 2020); *Massey v. United States*, 895 F.3d 248, 251 (2d Cir. 2018); *Washington v. United States*, 868 F.3d 64, 65-66 (2d Cir. 2017); *Green v. United States*, 397 F.3d 101,

102-103 (2d Cir. 2005); *Carmona v. United States*, 390 F.3d 200, 202 (2d Cir. 2004). Furthermore, Binday previously cited *Panetti*, and this Court nevertheless "reject[ed] [Binday's] argument that a claim based on *Kelly* . . . would not be successive because that decision announced new law that was previously unavailable; § 2255(h) clearly covers that circumstance and the cases cited by [Binday] are inapposite." (No. 21-1206, Dkt. 46). The same reasoning applies here.

27.     The Antiterrorism and Effective Death Penalty Act of 1996 "places stringent limits on a prisoner's ability to bring a second or successive" Section 2255 motion. *Adams v. United States*, 155 F.3d 582, 583 (2d Cir. 1998). "A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain" a claim relying on either of the following:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h); *see also* 28 U.S.C. § 2244(b)(2). Binday's proposed claim based on *Ciminelli* does not qualify under either § 2255(h) category.

28.     First, *Ciminelli* does not constitute "newly discovered evidence" within the meaning of § 2255(h)(1). *Cf. McCloud v. United States*, 987 F.3d 261, 267 (2d

14

Cir. 2021) (holding that "an intervening development in case law does not constitute a newly discovered fact within the meaning of [28 U.S.C.] § 2255(f)(4)").

29.     Second, *Ciminelli* is a statutory ruling, and thus is not "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court." 28 U.S.C. § 2255(h)(2). The question presented in *Ciminelli* was "whether the Second Circuit's longstanding 'right to control' theory of fraud describes a valid basis for liability under the federal wire fraud statute." *Ciminelli*, 143 S. Ct. at 1124. The defendant "challenged the right-to-control theory, arguing that the right to control one's assets is not 'property' for purposes of the wire fraud statute." *Id.* at 1126. In answering the question presented, the Court engaged in statutory interpretation, examining the text, structure, and history of the wire fraud statute.

30.     The Court first determined that "[t]he right-to-control theory cannot be squared with the text of the federal fraud statutes, which are 'limited in scope to the protection of property rights.'" *Id.* at 1127 (quoting *McNally v. United States*, 483 U.S. 350, 360 (1987)); *see also id.* at 1126 (explaining textual "'money or property' requirement"). The Court also concluded that "[t]he right-to-control theory is . . . inconsistent with the structure and history of the federal fraud statutes." *Id.* at 1128. As the Court explained, lower courts had "for decades interpreted the mail and wire fraud statutes to protect intangible interests unconnected to traditional property rights," *id.* at 1126, but the Court "halted that trend" in a prior statutory ruling,

"confining the federal fraud statutes to their original station, the 'protection of individual property rights,'" *id.* at 1127 (quoting *McNally*, 483 U.S. at 359 n.8). Congress responded to *McNally* by enacting 18 U.S.C. § 1346, which "revived *only* the intangible right of honest services"—even though lower courts had protected a "wide array of intangible rights" under the fraud statutes pre-*McNally*. *Id.* at 1128. This statutory history "forecloses the expansion of the wire fraud statute to cover the intangible right to control." *Id.* Tellingly, by suggesting that Congress could have responded to *McNally* to revive other intangible rights, including the right to control, the Court confirmed that *Ciminelli* is a statutory decision, rather than a constitutional one.

31.     Accordingly, *Ciminelli* is a statutory ruling, not "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court." 28 U.S.C. § 2255(h)(2). Thus, *Ciminelli* is not a valid basis for a second or successive motion under § 2255(h)(2). *See Mata*, 969 F.3d at 93-94 (decision "simply construing a statute" did not satisfy § 2255(h)(2)); *Massey*, 895 F.3d at 252 (decision that "interpreted [a statutory] clause" did not satisfy § 2255(h)(2)); *Washington*, 868 F.3d at 66 (decision that "was interpreting [a statute], not the Constitution," did not satisfy § 2255(h)(2)); *cf.* No. 21-1206, Dkt. 46 ("*Kelly* interpreted a statute and did not rely on any constitutional provision.").

32. Binday nevertheless claims that *Ciminelli* set out a new rule of constitutional law because the Supreme Court "ruled that the right of control theory conflicts with the constitutional principles of federalism and lenity." (Mot. 8). Contrary to Binday's assertion, the Court did not invoke lenity. And while the Court did note that the right-to-control theory could cover conduct "traditionally left to state contract and tort law," it relied on established precedent for that concern. *Ciminelli*, 143 S. Ct. at 1128 (citing *Cleveland*, 531 U.S. at 27 and *Kelly*, 140 S. Ct. at 1574); *see also Kelly*, 140 S. Ct. at 1574 (citing *Cleveland* and *McNally* for similar concern). Thus, while the Court's interpretation of the wire fraud statute was guided in part by federalism concerns, that does not change the conclusion that the Court was construing a statute and not any constitutional provision. *See Washington*, 868 F.3d at 66 (concluding that even though intervening statutory ruling "had been based in part on constitutional concerns, those concerns did not reflect a new rule").

### b. Binday Fails to Show Actual Innocence for a § 2241 Petition

33. Section 2255 contains a saving clause that permits an inmate serving a sentence of imprisonment imposed by a federal court to seek habeas corpus relief only if "the remedy by motion [under Section 2255] is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). This Court has interpreted the phrase "inadequate or ineffective" in Section 2255's saving clause to refer to "those cases 'in which the petitioner cannot, for whatever reason, utilize § 2255, and

in which the failure to allow for collateral review would raise serious constitutional questions.'" *Cephas v. Nash*, 328 F.3d 98, 104 (2d Cir. 2003) (quoting *Triestman v. United States*, 124 F.3d 361, 377 (2d Cir. 1997)).

34.     To date, the Court has "recognized only one" category of cases satisfying the *Triestman* test and permitting a Section 2241 petition under the saving clause, *id.*: "when § 2255 is unavailable and the petition is filed by an individual who (1) can prove actual innocence on the existing record, and (2) could not have effectively raised his claim of innocence at an earlier time, perhaps due to an intervening change in the governing interpretation of the statute of conviction." *Dhinsa*, 917 F.3d at 81 (citing *Cephas* and *Triestman*). "To make a threshold showing of 'actual innocence' under the first prong, a petitioner 'must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Id.* (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). Where, as here, the claim is based on an intervening change in the law, a petitioner must state a colorable claim that "the trial evidence was insufficient to support his conviction on a correct understanding of the law." *Id.* The court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

35.     Binday's underlying motion cannot proceed under Section 2241 because he will be unable to make the requisite showing of actual innocence. Binday's scheme to defraud was designed to obtain money from the victim insurance companies. *See Binday*, 804 F.3d at 567 (fraud generated $11.7 million in commissions paid by insurers to defendants); *id.* at 585 (recognizing that "[c]omission payments" were "the object of the scheme"); *id.* ("From the indictment through the trial, the government consistently maintained that defendants sought to obtain money (in the form of commissions) from the victim insurers . . . ."). While the *Ciminelli* Court rejected the right-to-control theory as a basis for wire-fraud liability, it also reaffirmed that the fraud statutes reach traditional property interests. Thus, the fraud statutes continue to reach schemes with money as the object. *See, e.g.*, *Ciminelli*, 143 S. Ct. at 1126 (Government must prove that "money or property was an object of the[] fraud"); *Kelly*, 140 S. Ct. at 1573 (noting that schemes with government "cash" or employee labor as the object are valid); *Pasquantino v. United States*, 544 U.S. 349, 357 (2005) ("scheme aimed at depriving [government] of money" was valid); *United States v. Gatto*, 986 F.3d 104, 116 (2d Cir.) (affirming wire fraud conviction where object of scheme was money, *i.e.*, universities' "funds set aside for financial aid"), *cert. denied*, 142 S. Ct. 710 (2021); *United States v. Weigand*, 482 F. Supp. 3d 224, 236 (S.D.N.Y. 2020) (denying motion to dismiss where "the object of the alleged scheme was money"); *cf. Ciminelli*, 143 S. Ct. at

19

1129 (Alito, J., concurring) (noting that "valuable contracts" are "a traditional form of property"). Because the Government proved at trial "not only that [Binday] engaged in deception, but also that money or property was an object of the[] fraud," *Ciminelli*, 143 S. Ct. at 1126, Binday cannot show that he is actually innocent based on "a correct understanding of the law," *Dhinsa*, 917 F.3d at 81.

### 2. Binday Fails to Show Extraordinary Circumstances that Make Bail Necessary to Make Habeas Effective

36. In addition to a high probability of success on the merits, a defendant seeking bail pending resolution of a habeas petition must establish "that extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective." *Mapp*, 241 F.3d at 226. Binday has failed to show that the grant of bail is necessary to make the habeas remedy effective.

37. Binday claims that being subjected to home confinement "after the Supreme Court confirmed that the sole basis for Binday's conviction was invalid" is an extraordinary circumstance. (Mot. 18). But as discussed above, Binday is not actually innocent under a traditional money-or-property theory. And in claiming that his conviction is invalid, Binday is similarly situated to "[v]irtually all habeas corpus petitioners [who] argue that their confinement is unlawful." *Iuteri*, 662 F.2d at 162; *cf. United States v. Silver*, 954 F.3d 455, 460 (2d Cir. 2020) (rejecting criminal defendant's "customary" argument that there was "good cause for a stay" because he risked serving prison time when his conviction could ultimately be reversed,

20

which "is true for virtually every criminal defendant seeking a writ of certiorari"). Tellingly, the Supreme Court, which applies a similar standard for bail pending habeas, *see Aronson v. May*, 85 S. Ct. 3, 5 (1964), denied Binday's application for bail pending resolution of his certiorari petition.

38.     Further, as Binday acknowledges, he is not incarcerated in a federal prison and is instead serving his sentence on home confinement. (Mot. 16). While Binday argues that the conditions of home confinement impose restrictions on his freedom (*see id.*), those conditions are far less restrictive than the conditions of traditional incarceration. Even if Binday could show that his motion had a high probability of success on the merits—and he cannot—the restrictions on his freedom as a result of home confinement do not constitute extraordinary circumstances warranting release. *See Jackson v. Bennett*, No. 01 CIV 8971 (NRB), 2002 WL 126679, at *1 (S.D.N.Y. Jan. 30, 2002) (concluding that petitioner "provide[d] no evidence of any extraordinary circumstances that would require granting of bail to make the habeas remedy effective" notwithstanding the fact that his "petition consist[ed] of complaints regarding the conditions of his confinement").

39.     Nor is there any reason to believe that Binday's application for permission to file a second or successive motion (and, if permission is granted, the successive motion itself) will not be decided before September 20, 2025, the scheduled end of his sentence. In any event, Binday's habeas petition will not have

been "for naught," as "the vacatur of his conviction—were it to come to pass—will almost certainly have favorable collateral consequences for the petitioner." *United States v. Whitman*, 153 F. Supp. 3d 658, 661 (S.D.N.Y. 2015) ("[N]earing the end of a prison term does not qualify as an 'extraordinary circumstance' for purposes of this [bail pending habeas] analysis.").

## CONCLUSION

40.     For the foregoing reasons, this Court should deny Binday's motion for bail.

Dated:      New York, New York
            June 20, 2023

                              /s/ Connie Dang
                              Connie Dang
                              Assistant United States Attorney
                              Telephone: (212) 637-2543

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this opposition complies with the type-volume limitation of the Federal Rules of Appellate Procedure. As measured by the word processing system used to prepare this opposition, there are 5,195 words in this opposition.

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York


By:    CONNIE DANG
       Assistant United States Attorney
       (212) 637-2543