UNITED STATES COURT OF APPEAL
FOR THE SECOND CIRCUIT

| | |
|---|---|
| **MICHAEL BINDAY,** | ) No. 21-1206 |
| | ) |
| Petitioner, | ) District court file 17-cv-04723 |
| | ) (CM) |
| | ) |
| v. | ) |
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| | ) |
| Respondent. | ) |
| | ) |
| _____ | ) |

## PETITIONER MICHAEL BINDAY'S REPLY IN SUPPORT OF MOTION FOR BAIL

The Supreme Court's unanimous opinion in *Ciminelli v. United States*, 143 S. Ct. 1121 (2023), and its order granting Petitioner Michael Binday's petition for a writ of certiorari, vacating the judgment, awarding Binday costs, and remanding to this Court for further consideration in light of *Ciminelli* confirm that, at a minimum, Michael Binday's habeas petition raises "substantial claims," and his circumstances are "extraordinary."

1

The government's late-filed opposition[1] to Binday's motion for bail is infused with factual[2] and legal errors.

In 2016, this Court stayed its mandate and continued Binday on bail to allow Binday to ask the Supreme Court to review the right to control theory. *United States v. Binday*, No. 14-2809, Doc. 204.) It should do so again now that the Supreme Court vindicated his arguments.

**I. Binday Raises Substantial Claims.**

    **a. The government relies on the wrong standard.**

The government contends that Binday must raise "substantial constitutional claims upon which he has a *high probability of success*." Opp. at 11 (emphasis added). That is not the law in this Circuit.

The standard for release pending a collateral attack comes from Justice Douglas's opinion in *Aronson v. May*, 85 S. Ct. 3 (1964). To obtain release, a defendant must show only that his petition presents "substantial questions." *Id.* at 5. The *Aronson* opinion

---

[1] *See* Local Rule of Appellate Procedure 27.1(f) (deadline for filing a brief will not be extended "[a]bsent an extraordinary circumstance, such as serious personal illness or death in counsel's immediate family."); Fed. R. App. P. 26 (applying only to computation of "time periods," not to orders requiring filing on a specific day). Binday recognizes that even without the government's opposition, this Court must analyze whether Binday has demonstrated proper reasons for bail. Nevertheless, the government's casual approach to its own chosen due date of its opposition, its improper reliance on the abrogated Second Circuit opinion affirming Binday's conviction, and its concessions in the Supreme Court and here all support Binday's motion. The government's failure to file on time delayed Binday's reply and unnecessarily extended his detention.

[2] As discussed below, the Supreme Court expressly abrogated *United States v. Binday*, 804 F.3d 558, 570 (2d Cir. 2015). The government's reliance on the facts and law (Opp. at 2-6 and 19) set out in that now-eliminated opinion is improper.

2

never suggested that showing a "substantial question" meant showing a "high probability of success," and the Supreme Court has never used that language in addressing the standard for release.

This Court then applied the *Aronson* standard in *Ostrer*, holding that a defendant must show that his appeal presents "substantial questions." *Ostrer v. United States*, 584 F.2d 594, 599 (2d Cir. 1978). Since then, this Court has consistently stated that a defendant must show that he has "substantial claims." *Mapp v. Reno,* 241 F.3d 221, 226 (2d Cir. 2001); *Grune v. Coughlin*, 913 F.2d 41, 44 (2d Cir. 1990); *Iuteri v. Nardoza*, 662 F.2d 159, 161 (2d Cir. 1981). In the face of this precedent, the government relies on a single published opinion using the "high probability of success" language—*Mapp*—which does so only in a footnote quoting a district court case from another circuit. *See Mapp,* 241 F.3d at 226 n.5 (quoting *Tam v. I.N.S.*, 14 F. Supp. 2d 1184, 1190 (E.D. Cal. 1998)). The *Mapp* opinion did not embrace *Tam* and rather held that a habeas petitioner need only raise "substantial claims. *Id.* at 226 (citing *Grune*, 913 F.2d at 44).

Neither the Supreme Court nor this Court has held that defendants seeking release must show a "high probability of success"; they must simply show "substantial questions" or "substantial claims."

### b. Petitioner's 28 U.S.C. § 2255 motion is not second or successive.

The government's position that Binday's petition is second or successive is based on a crabbed reading of *Panetti v. Quarterman*, 551 U.S. 930, 943-44 (2007). In *Panetti*, the Supreme Court concluded that "second or successive" did not include a second in time petition raising a claim that did not ripen until after his first habeas petition was

3

adjudicated. 551 U.S. at 942-45. It rejected the state's argument that a prisoner contemplating a future unripe claim must nevertheless file it with his first claim. *Id.* at 943, 946. It explained that if such an interpretation of "second or successive" were correct, "'the implications for habeas practice would be far reaching and seemingly perverse.'" *Id.* at 943 (quoting *Stewart v. Martinez-Villareal*, 523 U.S. 637, 644 (1998)).

The decision in *Panetti* has since been applied broadly. *See Stewart v. United States*, 646 F.3d 856, 852 n.12 (11th Cir. 2011) ("[W]hen a claim could not have been raised in a prior habeas petition, courts have interpreted *Panetti* to permit that claim to be raised in a subsequent petition." (citing *United States v. Buenrostro*, 638 F.3d 720, 725 (9th Cir. 2011) (per curiam) ("Prisoners may file second-in-time petitions based on events that do not occur until a first petition is concluded.")); *Johnson v. Wynder*, 408 F. App'x. 616, 619 (3d Cir. 2010) ("We see no reason to avoid applying *Panetti* in the context of other types of claims that ripen only after an initial federal habeas petition has been filed."); *United States v. Lopez*, 577 F.3d 1053, 1064 (9th Cir. 2009).

The government contends *Panetti* is limited to "claims of incompetency to be executed." Opp. at 13. But that is not how the cases have applied it, and such a reading would have particularly harsh results here. Binday has challenged the right-to-control theory at every stage of his case, including before this Court on direct appeal and even in his first section 2255 motion. Reply Memorandum in Support of Section 2255 Motion, 12 CR 152-CM (S.D.N.Y. 2017) Doc. 446 at 5-6 ("Mr. Binday continues to assert that that the right to control theory is inconsistent with United States Supreme Court precedent, including *Skilling* and *Cleveland*, both of which rejected the 'right to control'

4

as proof of the property element of fraud."). And he raised it in the Supreme Court after that court granted certiorari in *Kelly*. Petition for Certiorari, *Binday v. United States*, No. 19-273, at ii, 25-36. Binday did not miss a single opportunity to challenge the theory.

For the Court to now conclude that Binday is barred from vindicating his legal innocence through habeas because *the courts* were prohibited from considering his argument, *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001), would be to punish Binday for this Court's inability to recognize the merits of his right-to-control challenge earlier. Such a conclusion would be overly harsh and would undermine the purpose of section 2255. *Boumediene v. Bush*, 553 U.S. 723, 776 (2008) (noting that the purpose of section 2255 was "to strengthen, rather than dilute, the writ's protections").

The Supreme Court's recent opinion in *Jones v. Hendrix*, No. 21-857, 2023 WL 4110233, at *1 (U.S. June 22, 2023), does not alter the meaning of "second or successive" under 28 U.S.C. § 2255, and instead confirms Binday's position. *Jones* reaffirms the importance of applying constitutionally based decisions—like *Ciminelli*—retroactively so that petitioners may have the benefit of section 2255(h) relief. *See Jones v. Hendrix*, No. 21-857, 2023 WL 4110233, at *7 (U.S. June 22, 2023) (Congress authorized successive petitions based on new constitutional rules). Moreover, the government, in response to Binday's petition for a writ of certiorari, requested that Binday's petition be held pending the disposition of *both Ciminelli* and *Jones*. Mem. of Respondent United States at 2, *Binday v. United States*, No. 21-1241. The Supreme Court declined to do so, instead granting, vacating, and remanding Binday's case to this Court for consideration *only in light of Ciminelli*. If the Supreme Court thought *Jones* in

5

any way altered Binday's entitlement to habeas relief, it would have held Binday's petition pending a decision in *Jones* or simply denied his petition. It did not.

Accordingly, Binday's petition is not "second or successive." At minimum, Binday has raised a "substantial claim" that his petition is not "second or successive."

### c. *Ciminelli* set forth a new rule of constitutional law.

The government concedes that the Supreme Court relied on federalism concerns (Opp. at 17)—the oldest question of constitutional law—in reaching its decision but dismisses the principle because the Court did not cite to a particular constitutional provision. It is wrong about federalism and turns a blind eye to much of the *Ciminelli* opinion.

First, the government ignores its own agreement in the Supreme Court that the right to control theory is "incorrect" and "overbroad," conceding that "[t]he Second Circuit has not always been consistent in its articulation of the requirements of the right-to-control theory, or in its efforts to ground those requirements in the elements of fraud." Brief for the United States, *Ciminelli v. United States*, U.S. Supreme Court, No. 21-1170, at 12, 24.

Second, the Supreme Court's decision to grant, vacate, and remand Binday's case alone demonstrates that *Ciminelli* is a substantive rule of constitutional law made retroactive. The Supreme Court knew that (1) Binday previously challenged the right to control theory on direct appeal and in a petition for a writ of certiorari; (2) he filed an ineffective assistance of counsel claim because his lawyer misapprehended the right to control theory (and he included his challenge to the right to control theory); and (3) he

6

raised both the ineffective assistance of counsel claim and his right to control challenge in a certiorari petition. It also saw this Court's order that Binday was foreclosed from bringing a "second" section 2255 petition because of that previous petition. If *Ciminelli* was not constitutionally based and retroactive, then the Supreme Court would have denied his petition under section 2255(h), thereby affirming this Court's order. Instead, it ordered this Court to reconsider its decision *only* in light of *Ciminelli*—meaning that this Court must consider whether Binday was in fact properly convicted under a now-invalid theory of criminal liability.

Third, every Supreme Court case that previously construed "property" as limited to its traditional meaning (*McNally, Cleveland, Skilling,* and *Sekhar v. United States*, 570 U.S. 729, 737 (2013)[3]), has done so because the judicially expanded definitions made the law unconstitutionally vague, violated federalism, and deprived people of fair notice. *Ciminelli*'s reasoning is similarly based on constitutional principles of federalism, due process, fair notice, and vagueness. Citing *Cleveland*, the *Ciminelli* Court held the fraud statutes only address schemes to deprive people of traditional property interests. *Cleveland* expressly relied on the rule of lenity: "to the extent that the word 'property' is ambiguous as placed in § 1341, we have instructed that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'" *Cleveland v. United States*, 531 U.S. 12, 25 (2000). And *Cleveland* also explained that it rejected fraud theories that

---

[3] The Supreme Court noted the government's "shifting and imprecise characterization of the alleged property at issue betrays the weakness of its case"—an observation equally applicable here.

7

stray from traditional concepts of property because such theories violate federalism: "Equating issuance of licenses or permits with deprivation of property would subject to federal mail fraud prosecution a wide range of conduct traditionally regulated by state and local authorities." *Id.* at 24.

*Cleveland* in turn relied on *McNally* for the constitutional principle that a criminal statute violates the Constitution when courts read it too broadly. Statutes may not be read by courts in ways that leave their "outer boundaries ambiguous and involve[] the Federal Government in setting standards of disclosure." *McNally v. United States*, 483 U.S. 350, 360 (1987).

The Supreme Court in *Ciminelli* held that the right to control theory "vastly expands federal jurisdiction without statutory authorization" and "makes a federal crime of an almost limitless variety of deceptive actions traditionally left to state contract and tort law…. The right-to-control theory thus criminalizes traditionally civil matters and federalizes traditionally state matters." *Ciminelli*, 143 S. Ct. at 1128. That was hardly passing "guidance" from the Court (*see* Opp. at 17).

When the Supreme Court construes a statute in a way that exonerates people convicted under a misreading of a statute—as it did in *Ciminelli*—it does so because the Constitution prohibits an overbroad application of criminal law; an overbroad law is unconstitutionally vague. The judicially created rule that intangible rights are property for purposes of the fraud statute was rejected in *McNally* because a broader reading violated the rule of lenity and fair notice requirements of due process. "The Court has often stated that when there are two rational readings of a criminal statute, one harsher

8

than the other, we are to choose the harsher only when Congress has spoken in clear and definite language." *McNally*, 483 U.S. at 359–60.

For that principle, the Supreme Court in *McNally* cited to *United States v. Bass,* 404 U.S. 336, 347 (1971), *United States v. Universal C.I.T. Credit Corp.,* 344 U.S. 218, 221–222 (1952), and *Rewis v. United States,* 401 U.S. 808, 812 (1971). *Bass* held that the rule of lenity was grounded in the constitutional requirement of fair notice and the prohibition of judicially created crimes. *Universal C.I.T Credit* also relied on the rule of lenity: "when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite. We should not derive criminal outlawry from some ambiguous implication." So, too, did *Rewis*: "[E]ven if this lack of support were less apparent, ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity."

Moreover, when the Supreme Court restricts the application of criminal statutes because lower courts' readings do not give ordinary people proper notice, that is a constitutionally based due process decision. *See McDonnell v. United States*, 579 U.S. 550, 576 (2016) ("'Invoking so shapeless a provision to condemn someone to prison' for up to 15 years raises the serious concern that the provision 'does not comport with the Constitution's guarantee of due process.'" (citation omitted)). Indeed, "perhaps the most basic of due process's customary protections is the demand of fair notice." *Sessions v. Dimaya*, 138 S. Ct. 1204, 1225 (2018) (Gorsuch, concurring).

9

And when federal courts apply statutes to set standards of behavior that lead to "an unprecedented incursion into the criminal jurisdiction of the State"—which is exactly what the Court held in *Ciminelli*—they violate the constitutional requirement of federalism. *See United States v. Enmons*, 410 U.S. 396, 411 (1973) (rejecting broad reading of Hobbs Act extortion because of the rule of lenity and federalism concerns) (cited in *McDonnell v. United States*, 579 U.S. 550, 577 (2016)).

Not only are incursions into state authority prohibited by the Constitution, but judge-made criminal laws are also unconstitutional violations of the separation of powers. Only Congress may adopt criminal laws that have "an ascertainable standard of guilt and are adequate to inform persons accused of violation thereof of the nature and cause of the accusation against them," *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 89 (1921). "Congress alone has power to define crimes against the United States." *Id*. at 87. The "right to control" fraud was never enacted by Congress.

In *Ciminelli'*s companion Supreme Court decision, *Percoco*, the Supreme Court condemned the judicial construction of the fraud statutes that gave "an uncertain breadth" to the law because it "raises 'the due process concerns underlying the vagueness doctrine.'" *Percoco v. United States*, 143 S. Ct. 1130, 1137 (2023).

Yet, despite its own concession about "overbreadth" in the Supreme Court and its grudging concession here, the government claims *Ciminelli* is a "statutory ruling" (Opp. at 15) and thus not a constitutional decision. The government's distinction does not exist.

There is nothing in the Supreme Court's history of limiting the scope of the fraud statutes that supports the government's "interpreting a statute" exception. In *Schriro v.*

10

*Summerlin*, 542 U.S. 348 (2004), the Court held that new substantive rules include, among other things, "decisions that narrow the scope of a criminal statute by interpreting its terms" and "generally apply retroactively." That is because, to hold otherwise, would "risk that a defendant stands convicted of 'an act that the law does not make criminal' or faces a punishment that the law cannot impose upon him." *Id*. at 351-52 (citations omitted). Such rules are retroactive on collateral review under *Teague v. Lane*, 489 U.S. 288, 307 (1989) (criminalizing "certain kinds of primary, private individual conduct" is "beyond the power of the criminal law-making authority to proscribe.")

The Supreme Court has said repeatedly that when its decisions change the "substantive reach" of a penal law—that is, when it "alters the range of conduct or the class of persons that the law punishes"—then it is a new rule of substantive law retroactive to cases on collateral review. *Welch v. United States*, 578 U.S. 120, 129 (2016). That rule applies to decisions that "narrow the scope of a criminal statute by interpreting its terms, as well as constitutional determinations that place particular conduct or persons covered by the statute beyond the State's power to punish." *Id*.

The Court in *Welch* reaffirmed that when its decision "changes the scope of the underlying criminal proscription," it is a substantive constitutional and retroactive rule. *Welch*, 578 U.S. at 131. The Court rejected the same argument the government makes here—that a decision interpreting a criminal statute simply defines what Congress always meant and thus is not based on the Constitution. *Id*.

> That argument is not persuasive. Neither *Bousley* nor any other case from this Court treats statutory interpretation cases as a special class of decisions that are substantive because they

11

> implement the intent of Congress. Instead, decisions that interpret a statute are substantive if and when they meet the normal criteria for a substantive rule: when they "alte[r] the range of conduct or the class of persons that the law punishes."

*Welch*, 578 U.S. at 134 (citation omitted).

Contrary to its position here, in *Welch*, the government *agreed* that the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591, 594 (2015), was retroactive, so the Supreme Court appointed an amicus to argue against retroactivity. And, as the Court noted, even amicus "acknowledge[d] that a decision that saves a vague statute by adopting a limiting construction is substantive, so anyone who falls outside the limiting construction can use that decision to seek relief on collateral review." *Id*. For that point, the Court cited to *Skilling*, which (like *Ciminelli*) limited the reach of the fraud statutes because to do otherwise would make the statute unconstitutionally vague. *See Skilling v. United States*, 561 U.S. 358, 405 (2010) (limiting the construction of section 1346 because to do otherwise would allow an "impermissibly vague" criminal law to be applied in an unconstitutionally indefinite manner).[4]

---

[4] Several courts vacated fraud convictions following *Skilling*. *See United States v. Post*, 950 F. Supp. 2d 519 (S.D.N.Y. 2013); *Colino v. United States*, No. SACR 04-0284 DOC, 2012 WL 1198446, at *1 (C.D. Cal. Apr. 9, 2012) (coram nobis); *Stayton v. United States*, 766 F. Supp. 2d 1260 (M.D. Ala. 2011). The government also conceded that *Skilling* was retroactive for the purposes of collateral review. *Martignoni v. United States*, No. 10 CIV. 6671 JFK, 2011 WL 4834217, at *10 (S.D.N.Y. Oct. 12, 2011) ("As noted, at oral argument, the Government has admitted the retroactive application of *Skilling* on collateral review."). This is consistent with courts' treatment of *McNally* following the Supreme Court's decision in that case. *Ingber v. Enzor*, 841 F.2d 450, 453–54 (2d Cir. 1988) (*McNally* is retroactive); *United States v. Mitchell*, 867 F.2d 1232, 1233 (9th Cir. 1989) (same); *United States v. Shelton*, 848 F.2d 1485, 1488–90 (10th Cir.1988) (en banc) (same).

Thus, the Supreme Court and the government itself previously rejected the unfounded "statutory interpretation" exception to constitutional analysis. Responding to the amicus effort to restrict the meaning of "substantive," the *government* argued that "in *Bousley* [*v. United States*, 523 U.S. 614 (1998)], the Court explained that statutory-interpretation decisions of this Court holding that a federal criminal statute does not reach certain conduct are 'like' decisions that 'plac[e] conduct beyond the power of the criminal law-making authority to proscribe,' and are therefore substantive and retroactive, because of the 'significant risk that a defendant stands convicted of an act that the law does not make criminal.'" Brief of the United States, *Welch v. United States of America*, 2016 WL 1165972, at * 15 (U.S. 2016) (explaining that when *Bailey* "narrowed the construction of 'use' of a firearm in 18 U.S.C. 924(c) to exclude possession offenses," the decision "was substantive and retroactive, …even though Congress could (and did) amend Section 924(c)(1) to restore possession offenses to the statute.").

Having prevailed in *Welch* on when a new decision is constitutional and retroactive and having defeated the amicus effort to create an exception to those rules for statutory interpretations, the government was estopped from rearguing here the *Welch* amicus's rejected claim. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.").

The government also argues that the Supreme Court suggested Congress could amend the fraud statute to include the right to control and that proves the *Ciminelli*

13

opinion was mere statutory interpretation. Opp. at 16. To the contrary, as the Court in *Welch* explained, that Congress may sometimes amend a statute to provide fair notice of the prohibited conduct does not detract from the Court's rejection of previous judicial expansions of criminal laws. "*Bousley* thus contradicts the contention that the *Teague* inquiry turns only on whether the decision at issue holds that Congress lacks some substantive power." *Welch*, 578 U.S. at 133.

In sum, regardless of whether Binday's current petition is "second or successive," Binday has demonstrated that *Ciminelli* represents a new rule of constitutional law made retroactive to cases on collateral review.

## II. Petitioner Demonstrates Extraordinary Circumstances.

While release pending resolution of a habeas petition is reserved for "unusual" or "special" cases, *Mapp*, 241 F.3d at 226, this is just such a case. The question is ultimately an equitable one for the Court: whether release is "in the interests of justice." *Aronson*, 85 S. Ct. at 5. Here, justice warrants bail for three reasons.

First, Binday is subject to onerous restrictions on his freedom under threat of a return to prison for any violation of the BOP's rules. Mot. at 16-18 (listing restrictions). The government, however, takes the hardline and uninformed view that because Binday is on home confinement rather than in "traditional incarceration," he is categorically barred from demonstrating extraordinary circumstances. Opp. at 21. But the government offers no support for that radical position and instead relies on an unpublished district court opinion concluding that an *incarcerated* inmate failed to demonstrate "extraordinary circumstances." Opp at 21 (citing *Jackson v. Bennett*, No. 01 CIV 8971

14

(NRB), 2002 WL 126679, at *1 (S.D.N.Y. Jan. 30, 2002)). That inmate did not have a Supreme Court decision that undermined his conviction.

<u>Second</u>, and contrary to the government's argument, Binday is not "similarly situated to '[v]irtually all habeas corpus petitioners [who] argue that their confinement is unlawful.'" Opp. at 20 (citing *Iuteri*, 662 F.2d at 162). Binday lives under onerous conditions of confinement even after the Supreme Court confirmed that the sole basis for his conviction was invalid. Binday does not merely *think* the Supreme Court *might* have disagreed with the basis for his conviction. In *Ciminelli*, the Supreme Court expressly cited this Court's *Binday* decision for the definition of right-to-control jurisprudence and then *immediately rejected* that theory:

> As developed by the Second Circuit, the theory holds that, "[s]ince a defining feature of most property is the right to control the asset in question," "the property interests protected by the wire fraud statute include the interest of a victim in controlling his or her own assets." *United States v. Lebedev*, 932 F.3d 40, 48 (2019) (alterations omitted). **Thus, a "cognizable harm occurs where the defendant's scheme denies the victim the right to control its assets by depriving it of information necessary to make discretionary economic decisions."** *United States v. Binday*, **804 F.3d 558, 570 (C.A.2 2015) (alterations omitted)**.
>
> **The right-to-control theory cannot be squared with the text of the federal fraud statutes, which are "limited in scope to the protection of property rights."** *McNally*, 483 U.S. at 360, 107 S.Ct. 2875. The so-called "right to control" is not an interest that had "long been recognized as property" when the wire fraud statute was enacted. *Carpenter v. United States*, 484 U.S. 19, 26, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987).

*Ciminelli v. United States*, 143 S. Ct. 1121, 1127 (2023) (footnote omitted) (emphasis added).

15

This passage did not just disagree with this the *Binday* decision, it abrogated—"legalspeak for eliminates"—the opinion. *Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Centro de Periodismo Investigativo, Inc.*, 143 S. Ct. 1176, 1180 (2023). It is thus disingenuous for the government to claim that Binday—whose conviction has been explicitly undermined by the Supreme Court and whose direct appeal decision has been abrogated—is "similarly situated" to virtually all habeas petitioners. Opp. at 20. Binday's case is nothing short of extraordinary.

Third, the government offers the callow suggestion that there is no "reason to believe that Binday's application for permission to file a second or successive motion (and, if permission is granted, the successive motion itself) will not be decided before September 20, 2025, the scheduled end of his sentence." Opp. at 21. The application may only be the first of many time-consuming steps given the government's stubborn refusal to accept the breadth of *Ciminelli*—especially if this Court remands the motions to the district court to resolve the issues in the first instance. This Court's decision denying Binday permission to file his habeas petition was handed down in October 2021—20 months ago. Binday's case is only now, in June 2023, returning to this Court. If the case continues to proceed at that pace, Binday will likely have served his entire illegal sentence before he receives a final resolution of his habeas petition. This, too, constitutes an extraordinary circumstance because the government's interest in opposing bail diminishes at the end of a sentence. *See Hilton v. Braunskill*, 481 U.S. 770, 777 (1987) (state's interest in opposing bail is "strongest where the remaining portion of the sentence to be served is long, and weakest where there is little of the sentence remaining to be

16

served"); *Marion v. Vasquez*, 812 F.2d 499, 507-09 (9th Cir. 1987) (granting bail because ensuing proceedings would exhaust "time remaining to be served on the petitioner's sentence"); *LaFrance v. Bohlinger*, 487 F.2d 506, 507 (1st Cir. 1973) (release approved because "petitioner below had served much, possibly most, of his state sentence").

### III. Conclusion

For the foregoing reasons, Petitioner Michael Binday respectfully requests that this Court grant him bail pending resolution of his habeas proceedings.

Dated: June 26, 2023

Respectfully Submitted,

_____
David W. Shapiro, NY Bar #2054054
The Norton Law Firm