# 21-1206

*To Be Argued By*:
CONNIE L. DANG

## United States Court of Appeals

### FOR THE SECOND CIRCUIT
### Docket No. 21-1206

━━━◆◆◆━━━

MICHAEL BINDAY,

*Petitioner,*

—v.—

UNITED STATES OF AMERICA,

*Respondent.*

───────

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

═══════

### BRIEF ON REMAND
### FOR THE UNITED STATES OF AMERICA

═══════

DAMIAN WILLIAMS,
*United States Attorney for the
Southern District of New York,
Attorney for the United States
of America.*
One St. Andrew's Plaza
New York, New York 10007
(212) 637-2200

CONNIE L. DANG,
KEVIN MEAD,
DAVID ABRAMOWICZ,
*Assistant United States Attorneys,
Of Counsel.*

# TABLE OF CONTENTS

PAGE

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . .   1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . .   3

   A.  Binday's Fraud Scheme . . . . . . . . . . . . . . .   3

   B.  The Indictment . . . . . . . . . . . . . . . . . . . . . .   5

   C.  The Trial . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

   D.  The Sentencing . . . . . . . . . . . . . . . . . . . . . .   7

   E.  The Direct Appeal . . . . . . . . . . . . . . . . . . . .   8

   F.  The Motion for a New Trial . . . . . . . . . . . .   9

   G.  The First Section 2255 Motion. . . . . . . . . .   9

   H.  The Second or Successive Section 2255
       Motion Based on *Kelly* . . . . . . . . . . . . . . .   10

   I.  The Certiorari Petition, the Hold Memo,
     and the Supreme Court's Order. . . . . . . . .   11

   J.  The Proposed Section 2255 Motion Based
     on *Ciminelli* . . . . . . . . . . . . . . . . . . . . . . . .   13

ARGUMENT:

POINT I—The Supreme Court's Order Does Not Bar
   Procedural Defenses . . . . . . . . . . . . . . . . . . . . .   13

   A.  Applicable Law . . . . . . . . . . . . . . . . . . . . . .   14

   B.  Discussion . . . . . . . . . . . . . . . . . . . . . . . . . .   16

ii

PAGE

POINT II—Binday's Proposed Motion Is a Second or
    Successive Section 2255 Motion . . . . . . . . . . .  20

    A.  Applicable Law . . . . . . . . . . . . . . . . . . . . .  21

    B.  Discussion . . . . . . . . . . . . . . . . . . . . . . . . .  23

POINT III—Binday's Proposed Motion Does Not Meet
    AEDPA's Gatekeeping Requirements for a
    Second or Successive Section 2255 Motion . . .  29

    A.  Applicable Law . . . . . . . . . . . . . . . . . . . . .  30

    B.  Discussion . . . . . . . . . . . . . . . . . . . . . . . . .  31

        1.  *Ciminelli* Is a Statutory Decision . . . .  31

        2.  References to Constitutional Principles
            Do Not Mean that *Ciminelli* Announced
            a New Rule of Constitutional Law . . .  33

        3.  The Cases *Ciminelli* Cites Do Not Show
            that *Ciminelli* Announced a New Rule of
            Constitutional Law . . . . . . . . . . . . . . .  36

POINT IV—Binding Precedent Forecloses Binday's
    Motion to Recall the Mandate . . . . . . . . . . . .  38

        1.  Applicable Law. . . . . . . . . . . . . . . . . . .  38

        2.  Discussion. . . . . . . . . . . . . . . . . . . . . . .  39

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  41

iii

# TABLE OF AUTHORITIES

*Cases*:

*Adams v. United States*,
  155 F.3d 582 (2d Cir. 1998) . . . . . . . . . . . . . . . . 30

*Apprendi v. New Jersey*,
  530 U.S. 466 (2000) . . . . . . . . . . . . . . . . . . . . . 16, 17

*Ardley v. United States*,
  531 U.S. 1063 (2001) . . . . . . . . . . . . . . . . . . . . . . 17

*Banister v. Davis*,
  140 S. Ct. 1698 (2020) . . . . . . . . . . . . . . . . . . . . . 25

*Bell v. United States*,
  296 F.3d 127 (2d Cir. 2002) . . . . . . . . . . . . . . . . 30

*Binday v. United States*,
  140 S. Ct. 1105 (2020) . . . . . . . . . . . . . . . . . . . . . 9

*Binday v. United States*,
  579 U.S. 917 (2016) . . . . . . . . . . . . . . . . . . . . . . . 9

*Bottone v. United States*,
  350 F.3d 59 (2d Cir. 2003) . . . . . . . . . . . . . . . . . 38

*Buck v. Davis*,
  580 U.S. 100 (2017) . . . . . . . . . . . . . . . . . . . . . . 20

*Calderon v. Thompson*,
  523 U.S. 538 (1998) . . . . . . . . . . . . . . . . . . . . . . 38

*Cephas v. Nash*,
  328 F.3d 98 (2d Cir. 2003) . . . . . . . . . . . 11, 28, 29

iv

PAGE

*Ciminelli v. United States*,
    598 U.S. 306 (2023). . . . . . . . . . . . . . . . . . . . . *passim*

*Cleveland v. United States*,
    531 U.S. 12 (2000). . . . . . . . . . . . . . . . . . .  8, 34, 36

*Dhinsa v. Krueger*,
    917 F.3d 70 (2d Cir. 2019) . . . . . . . . . . . . . . . . . 21

*Ford v. Wainwright*,
    477 U.S. 399 (1986). . . . . . . . . . . . . . . . . . . . . . . . . 26

*Galviz Zapata v. United States*,
    431 F.3d 395 (2d Cir. 2005) . . . . . . . . . . . . . . . . 31

*Garcia v. United States*,
    923 F.3d 1242 (9th Cir. 2019) . . . . . . . . . . . . . . 35

*Johnson v. United States*,
    559 U.S. 133 (2010). . . . . . . . . . . . . . . . . . . . . . . . 33

*Johnson v. United States*,
    576 U.S. 591 (2015). . . . . . . . . . . . . . . . . . . . . . . . 33

*Jones v. Hendrix*,
    599 U.S. 465 (2023). . . . . . . . . . . . . . . . . . . . . *passim*

*Jones v. Hendrix*,
    8 F.4th 683 (8th Cir. 2021). . . . . . . . . . . . . . . . . 28

*Kelly v. United States*,
    140 S. Ct. 1565 (2020). . . . . . . . . . . . . . . . . . *passim*

*Lawrence v. Chater*,
    516 U.S. 163 (1996). . . . . . . . . . . . . . . . .  14, 15, 18

*Magwood v. Patterson*,
    561 U.S. 320 (2010). . . . . . . . . . . . . . . . . . . . . . . . 25

v

PAGE

*Massey v. United States,*
    895 F.3d 248 (2d Cir. 2018) . . . . . . . . . . . . . . 31, 33

*Mata v. United States,*
    969 F.3d 91 (2d Cir. 2020) . . . . . . . . . . . . . . 30, 32

*Mathis v. United States,*
    579 U.S. 500 (2016). . . . . . . . . . . . . . . . . . . . . . . 33

*McNally v. United States,*
    483 U.S. 350 (1987). . . . . . . . . . . . . . . . . . . . . . . 37

*Panetti v. Quarterman,*
    551 U.S. 930 (2007). . . . . . . . . . . . . . . . . . . . . . . 26

*Pasquantino v. United States,*
    544 U.S. 349 (2005). . . . . . . . . . . . . . . . . . . . . . . 40

*Rehaif v. United States,*
    139 S. Ct. 2191 (2019). . . . . . . . . . . . . . . . . . . 28, 32

*Sargent v. Columbia Forest Prod., Inc.,*
    75 F.3d 86 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . 39

*Sekhar v. United States,*
    570 U.S. 729 (2013). . . . . . . . . . . . . . . . . . . . . . . . 8

*Skilling v. United States,*
    561 U.S. 358 (2010). . . . . . . . . . . . . . . . . . . . . . . . 8

*Thai v. United States,*
    391 F.3d 491 (2d Cir. 2004) . . . . . . . . . . . . . . . . 24

*Triestman v. United States,*
    124 F.3d 361 (2d Cir. 1997) . . . . . . . . . . . . . . 11, 30

*Tyler v. Cain,*
    533 U.S. 656 (2001). . . . . . . . . . . . . . . . . . . . . 16, 31

vi

PAGE

*United States v. Ardley,*
    242 F.3d 989 (11th Cir. 2001) . . . . . . . . . . . 16, 17

*United States v. Ardley,*
    273 F.3d 991 (11th Cir. 2001) . . . . . . . . . . . . . . 17

*United States v. Binday,*
    804 F.3d 558 (2d Cir. 2015) . . . . . . . . . . . . *passim*

*United States v. Fabian,*
    555 F.3d 66 (2d Cir. 2009) . . . . . . . . . . . . . . . . . 38

*United States v. Gatto,*
    986 F.3d 104 (2d Cir. 2021) . . . . . . . . . . . . . . . . 11

*United States v. Levy,*
    416 F.3d 1273 (11th Cir. 2005) . . . . . . . . . . . . . . 17

*United States v. Olano,*
    507 U.S. 725 (1993) . . . . . . . . . . . . . . . . . . . . . 16, 19

*United States v. Porat,*
    76 F.4th 213 (3d Cir. 2023) . . . . . . . . . . . . . . 34, 35

*United States v. Redd,*
    735 F.3d 88 (2d Cir. 2013) . . . . . . . . . . . . . . . . . 38

*United States v. Sadler,*
    750 F.3d 585 (6th Cir. 2014) . . . . . . . . . . . . . . . . 37

*Vu v. United States,*
    648 F.3d 111 (2d Cir. 2011) . . . . . . .   10, 23, 24, 26

*Washington v. United States,*
    868 F.3d 64 (2d Cir. 2017) . . . . . . . . . . .   33, 34, 35

*Whab v. United States,*
    408 F.3d 116 (2d Cir. 2005) . . . . . . . . . .   10, 24, 27

vii

PAGE

*Statutes, Rules & Other Authorities*:

18 U.S.C. § 1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

18 U.S.C. § 1346 . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

28 U.S.C. § 2106 . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

28 U.S.C. § 2244 . . . . . . . . . . . . . . . . . . . . . 29, 30, 31

28 U.S.C. § 2255 . . . . . . . . . . . . . . . . . . . . . . . *passim*

Aaron-Andrew P. Bruhl*, The Supreme Court's Controversial GVRs—and an Alternative*, 107 Mich. L. Rev. 711 (2009). . . . . . . . . . . . . . . . . . . . 18

# United States Court of Appeals

## FOR THE SECOND CIRCUIT
## Docket No. 21-1206

———————

MICHAEL BINDAY,

*Petitioner,*

—v.—

UNITED STATES OF AMERICA,

*Respondent.*

———————

## BRIEF ON REMAND
## FOR THE UNITED STATES OF AMERICA

———————

### Preliminary Statement

Michael Binday seeks leave to file a habeas petition under 28 U.S.C. § 2255 and, alternatively, moves to recall the mandate this Court issued when it rejected Binday's arguments on direct appeal in 2015.

In 2013, Binday was convicted of three felony fraud offenses after trial in the United States District Court for the Southern District of New York. In 2014, the Honorable Colleen McMahon, United States District Judge, sentenced Binday principally to 144 months' imprisonment. In 2015, this Court rejected Binday's

2

arguments on direct appeal and affirmed the judgment.

Binday filed a first Section 2255 petition in 2017, asserting ineffective assistance of counsel. The District Court denied the petition on the merits. The District Court and this Court declined to issue a certificate of appealability.

In March 2021, Binday filed a motion in the District Court styled under 28 U.S.C. §§ 2255 and 2241, arguing that his convictions were invalid in light of *Kelly v. United States*, 140 S. Ct. 1565 (2020). The District Court transferred the motion to this Court. In October 2021, this Court denied Binday's request for leave to seek relief under Section 2255 or Section 2241.

In March 2022, Binday petitioned the Supreme Court for certiorari based on this Court's refusal to let him file a second habeas petition. In September 2022, the Government filed a two-page memorandum urging the Supreme Court to hold Binday's petition pending the decisions in *Ciminelli v. United States* and *Jones v. Hendrix*.

The Supreme Court issued its opinion in *Ciminelli v. United States*, 598 U.S. 306 (2023), on May 11, 2023. Eleven days later, the Supreme Court issued an order granting Binday's certiorari petition, vacating this Court's judgment, and remanding to this Court for further consideration in light of *Ciminelli.* The following month, the Supreme Court issued its opinion in *Jones v. Hendrix*, 599 U.S. 465 (2023).

The Court should deny Binday's request for leave to file another Section 2255 motion. The proposed

3

motion is a second or successive Section 2255 motion, so it is subject to the gatekeeping requirements in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). It cannot meet those requirements because it is based on *Ciminelli*, which does not announce a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2).

The Court should also deny Binday's request to recall the eight-year-old mandate because, as this Court has repeatedly held, a motion to recall the mandate cannot be used to escape the requirements of Section 2255.

Binday is serving his sentence.

## Statement of Facts

### A.  Binday's Fraud Scheme

Beginning in 2006, Binday organized a conspiracy to fraudulently broker "stranger-oriented life insurance" ("STOLI") policies to insurance companies. *United States v. Binday*, 804 F.3d 558, 565-66 (2d Cir. 2015), *abrogated by Ciminelli v. United* States, 598 U.S. 306 (2023).[1]

"A STOLI policy is one obtained by the insured for the purpose of resale to an investor with no insurable

_____

[1]  Unless otherwise noted, case quotations omit internal quotation marks, citations, footnotes, and previous alterations.

4

interest in the life of the insured—essentially, it is a bet on a stranger's life." *Binday*, 804 F.3d at 565. STOLI policies became popular investment vehicles shortly before Binday's scheme began, as a mechanism for hedge funds and others to bet that the value of a policy's death benefits would exceed the value of the required premium payments. *Id*. In response to the popularity of STOLI policies, many insurance companies adopted rules against issuing STOLI policies and took steps to detect them. *Id*.

In 2006, Binday organized a group of insurance brokers to assist in fraudulently brokering STOLI policies. *Id*. at 566. Insurance brokers such as Binday received commissions from insurers for life insurance policies that they brokered, and, accordingly, "had a financial incentive to place STOLI policies by disguising them to the insurer as non-STOLI policies." *Id*. at 565-66. In other words, by disguising a STOLI policy, a broker could generate a commission on the policy that would not have been issued had the insurer known the policy's true purpose. *Id*.

Binday and his co-conspirators "recruited older persons of modest means to act as 'straw buyers' of the STOLI policies," enticing the straw buyers with promises of six-figure payments once policies were sold. *Id*. at 566. Once a straw buyer was recruited, Binday arranged for necessary medical tests and submitted them to multiple insurers to determine which "risk class" the straw buyer would fall into. *Id*. Binday also submitted the medical records to companies that prepare reports estimating life expectancies. *Id*. Binday then marketed insurance policies to potential STOLI

investors that projected the estimated costs of premiums until the straw buyers' projected deaths. *Id.*

While the health and age information Binday submitted to the insurance companies for the straw buyers was accurate, much of the other information was not. Binday had straw buyers sign blank applications. *Id.* at 566. Then he supplied false financial information—supported by fraudulent documentation—vastly inflating each straw buyer's wealth. *Id.* at 566-67. Binday also lied in response to application questions aimed at detecting STOLI policies, including questions about the purpose of the policy, how premiums would be paid, and whether the applicant had discussed selling the policy. *Id.* at 567. Binday falsely certified to the insurers that the premiums would not be paid by financing from third parties and that there was no agreement to transfer the policies' ownership. *Id.*

Binday submitted at least 92 fraudulent applications, resulting in the issuance of 74 STOLI policies with a total face value exceeding $100 million, and generating brokerage commissions of approximately $11.7 million. *Id.*

**B.  The Indictment**

Indictment 12 Cr. 152 (CM) (the "Indictment") was filed on February 15, 2012, in five counts, four of which charged Binday. (Dkt. 1).[2] Count One charged Binday

---

2    "Br." refers to Binday's September 12, 2023 brief; "Tr." refers to the transcript from Binday's trial; "Add." refers to the addendum to this brief; and unless

6

with participating in a conspiracy to commit mail fraud and wire fraud, in violation of 18 U.S.C. § 1349. Count Two charged Binday with mail fraud, in violation of 18 U.S.C. § 1341. Count Three charged Binday with wire fraud, in violation of 18 U.S.C. § 1343. Count Five charged Binday with obstruction of justice, in violation of 18 U.S.C. § 1512(c), but was dismissed prior to trial. *Binday*, 804 F.3d at 567.

The Indictment alleged that commissions were the object of Binday's schemes, stating that the "purpose of procuring the policies was to generate millions of dollars in commissions and other profits." *Id.* at 585.

## C. The Trial

Trial against Binday and two co-defendants commenced in September 2013. The evidence at trial established that, from in or about 2006 through in or about early 2009, Binday and his co-defendants, all insurance agents, engaged in a scheme to procure STOLI policies by means of fraudulent applications. *See Binday*, 804 F.3d at 565-66 (describing scheme).

Extensive evidence showed that the scheme sought to—and did—generate millions of dollars in brokerage commissions. Binday's company submitted fraudulent STOLI applications to insurance companies for more than 100 straw buyers, typically submitting multiple applications for each insured. (Tr. 130). A typical

───────────

otherwise specified, "Dkt." refers to an entry on the District Court's criminal docket for this case, No. 12 Cr. 152 (CM), and "App. Dkt." refers to an entry on this Court's docket for this case, No. 21-1206.

policy generated a six-figure agent commission. (Tr. 795-96, 903, 923-24, 1033). The investor whose interest had prompted the application would collect half of that commission, with the remainder divided among Binday, an intermediary who generated false financial information, and the agent who recruited the insured. (Tr. 455, 923, 1081). Agents sought to maximize their profits, including by seeking high first-year insurance premiums to increase their commissions. (Tr. 455, 459, 509-10). Binday touted the large commissions the fraud generated when trying to persuade agents to sell STOLI policies for him. In one recruiting session, Binday asked "who wants to have a Ferrari in their driveway," and followed with a pitch about an "opportunity to make large commissions with a new type of policy in the life settlement life insurance field." (Tr. 769). Meanwhile, the insurance companies that paid those commissions suffered extensive losses. (Tr. 638-39).

On October 7, 2013, the jury found Binday guilty on Counts One, Two, and Three of the Indictment. *Binday*, 804 F.3d at 569.

### D. The Sentencing

On July 30, 2014, the Honorable Colleen McMahon, United States District Judge, sentenced Binday principally to 144 months' imprisonment, to be followed by three years' supervised release. Judgment was entered the next day. (Dkt. 341).

8

### E.  The Direct Appeal

Binday appealed, and this Court affirmed his convictions on October 26, 2015. *See Binday*, 804 F.3d 558. In that direct appeal, Binday and his co-defendants "argue[d] primarily that the government did not prove that they contemplated harm to the insurers that is cognizable under the mail and wire fraud statutes." *Id.* at 565. That argument took the form of challenges to the sufficiency of the evidence and the jury charge, as well as a constructive-amendment claim. *Id.* The Court rejected each of the defendants' arguments that the Government failed to prove cognizable contemplated harm. *See id.* at 572-85. With one limited exception,[3] the Court also affirmed Binday's sentence. *Id.* at 595-99.

Binday petitioned for rehearing en banc. Citing *Sekhar v. United States*, 570 U.S. 729 (2013), *Skilling v. United States*, 561 U.S. 358 (2010), and *Cleveland v. United States*, 531 U.S. 12 (2000), none of which he had mentioned in his merits briefs filed in 2014 and 2015, Binday argued that rehearing was warranted because this Court's right-to-control jurisprudence had been "thoroughly undermined, if not outright repudiated by, intervening Supreme Court decisions." (No. 14-2809, Dkt. 181 at 1). On December 14, 2015, this Court denied Binday's rehearing petition. (No. 14-2809, Dkt. 189). On June 20, 2016, the Supreme Court

---

[3]  On consent of the parties, the Court remanded for the limited purpose of entering a reduced restitution amount of $37,433,914.17. *See Binday*, 804 F.3d at 601.

9

denied Binday's petition for a writ of certiorari, which was likewise based largely on *Sekhar*, *Skilling*, and *Cleveland*. *Binday v. United States*, 579 U.S. 917 (2016).

## F.  The Motion for a New Trial

On October 6, 2016, Binday moved in the District Court for a new trial under Federal Rule of Criminal Procedure 33(b)(1), citing alleged newly discovered evidence. (Dkt. 394). On August 29, 2017, Judge McMahon denied the motion. (Dkt. 431).

## G.  The First Section 2255 Motion

On June 20, 2017, Binday filed a Section 2255 motion raising several ineffective-assistance-of-counsel claims relating to issues of intent, materiality, economic harm, Binday's decision not to testify, and loss calculations at sentencing. (Dkt. 420). On May 23, 2018, Judge McMahon denied the motion, rejecting the ineffective-assistance claims as meritless, and declined to issue a certificate of appealability. (Dkt. 448). This Court denied Binday's motion for a certificate of appealability on January 15, 2019 (No. 18-2143, Dkt. 45), and denied Binday's motion for reconsideration on May 6, 2019 (No. 18-2143, Dkt. 80). On February 24, 2020, the Supreme Court denied Binday's petition for a writ of certiorari. *Binday v. United States*, 140 S. Ct. 1105 (2020).[4]

--------

[4]  On May 5, 2020, Binday moved in the District Court for a reduced sentence under 18 U.S.C. § 3582(c), citing the COVID-19 pandemic. (Dkt. 464).

10

### H.  The Second or Successive Section 2255 Motion Based on *Kelly*

On March 12, 2021, Binday filed a motion in the District Court styled under 28 U.S.C. §§ 2255 and 2241, arguing that his convictions were invalid in light of *Kelly v. United States*, 140 S. Ct. 1565 (2020). (Dkt. 479). On May 5, 2021, Judge McMahon transferred Binday's motion to this Court. (Dkt. 489). On October 12, 2021, this Court denied Binday's request for leave to seek relief under Section 2255 or Section 2241, writing:

> To the extent Petitioner's claim should be brought under § 2255, it would be successive within the meaning of § 2255(h) because Petitioner's first § 2255 motion challenged the same criminal judgment, was decided on the merits, and reached final adjudication before the filing of the present motion. *See Vu v. United States*, 648 F.3d 111, 113 (2d Cir. 2011); *Whab v. United States*, 408 F.3d 116, 118-19 (2d Cir. 2005). We reject Petitioner's argument that a claim based on *Kelly v. United States*, 140 S. Ct. 1565 (2020), would not be successive because that decision announced new law that was previously unavailable; § 2255(h) clearly covers that circumstance and the cases cited by Petitioner are inapposite.

―――――――

On July 16, 2020, Judge McMahon denied the motion. (Dkt. 475).

11

Petitioner is not entitled to relief under § 2255(h) because he has not made a prima facie showing that *Kelly* announced "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," as required by § 2255(h)(2). *Kelly* interpreted a statute and did not rely on any constitutional provision.

Petitioner also has not made a showing that he is entitled to relief under § 2241 because he has not made a showing of actual innocence. *See Cephas v. Nash*, 328 F.3d 98, 104 (2d Cir. 2003) (stating standard for proceeding under § 2241 instead of § 2255); *Triestman v. United States*, 124 F.3d 361, 373-74 (2d Cir. 1997) (same). This Court has recently upheld the theory of conviction challenged by Petitioner, *United States v. Gatto*, 986 F.3d 104, 125-27 (2d Cir. 2021), *petition for cert. filed*, No. 21-169 (Aug. 2, 2021), and he has not otherwise shown that his case is covered by the ruling in *Kelly*.

(App. Dkt. 46).

## I.   The Certiorari Petition, the Hold Memo, and the Supreme Court's Order

On March 10, 2022, Binday petitioned the Supreme Court for certiorari based on this Court's refusal to let him file a second habeas petition. (S. Ct. No. 21-1241).

12

On May 16, 2022, the Supreme Court granted the certiorari petition in *Jones v. Hendrix*. (S. Ct. No. 21-857). On June 21, 2022, the Supreme Court requested a response from the Government on Binday's petition, and on June 30, 2022, the Supreme Court granted the certiorari petition in *Ciminelli v. United States*. (S. Ct. No. 21-1170).

On September 21, 2022, the Government filed a two-page memorandum in Binday's case (the "Hold Memo") stating that "[b]ecause this Court's resolution of the questions presented in both *Ciminelli* and *Jones* may affect the judgment of the court of appeals below, the Court should hold the petition for a writ of certiorari pending its decisions in those cases and then dispose of the petition as appropriate." (Add. 3). The Hold Memo "waive[d] any further response to the petition for a writ of certiorari unless this Court requests otherwise" (Add. 2), but did not purport to waive anything else (Add. 1-4).

On November 29, 2022, Binday moved in the Supreme Court for bail pending resolution of his certiorari petition. On December 10, 2022, Justice Sotomayor denied the bail application.

On May 11, 2023, the Supreme Court issued its opinion in *Ciminelli*.

On May 22, 2023, the Supreme Court issued an order granting the certiorari petition in Binday's case, vacating this Court's judgment, and stating that "the case is remanded to the United States Court of Appeals for the Second Circuit for further consideration

13

in light of *Ciminelli v. United States*, 598 U.S. ___ (2023)." (Add. 5).

On June 22, 2023, the Supreme Court issued its opinion in *Jones v. Hendrix*, 599 U.S. 465 (2023).

### J. The Proposed Section 2255 Motion Based on *Ciminelli*

On June 2, 2023, Binday moved in this Court for bail pending resolution of his application for leave to file a Section 2255 motion based on *Ciminelli*. (App. Dkt. 59). On June 29, 2023, this Court denied the bail application. (App. Dkt. 95).

On July 7, 2023, Binday requested a schedule to submit briefing in connection with his application for leave to file a Section 2255 motion based on *Ciminelli*. (App. Dkt. 97). In light of the Supreme Court's vacatur of this Court's judgment denying Binday's application for leave to file a Section 2255 or Section 2241 motion, on July 18, 2023, this Court recalled the mandate in its decision in that case and stayed decision on the motion to allow time for the parties to submit new briefing. (App. Dkts. 109, 114).

### A R G U M E N T

### POINT I

### The Supreme Court's Order Does Not Bar Procedural Defenses

Binday argues that the Solicitor General's brief Hold Memo asking that his certiorari petition be

14

stayed pending the outcome of two other Supreme Court cases, and the Supreme Court's brief "grant, vacate, and remand" order when the first of those cases was decided, bar all of the Government's procedural defenses to his second or successive habeas petition. (Br. 11-13). Binday cites no cases with such a holding, his argument has been squarely rejected by the Eleventh Circuit, he misunderstands the role of the Supreme Court and the way it handles "grant, vacate, and remand" orders, and he fails to meet the high bar of establishing an intentional waiver.

## A. Applicable Law

"The Supreme Court or any other court of appellate jurisdiction may . . . vacate . . . any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and . . . require such further proceedings to be had as may be just under the circumstances." 28 U.S.C. § 2106. That statute, the Supreme Court has held, confers a "broad power" to summarily *grant* a petition of certiorari, *vacate* the judgment of the lower court, and *remand* the case to a lower court of consideration. *Lawrence v. Chater*, 516 U.S. 163, 166 (1996). Courts frequently abbreviate such an order as a "GVR." *Id.* "[T]he GVR order has," the Supreme Court explained,

> become an integral part of this Court's practice, accepted and employed by all sitting and recent Justices. We have GVR'd in light of a wide range of developments, including our own decisions, State Supreme Court decisions, new federal

15

statutes, administrative reinterpreta-
tions of federal statutes, new state stat-
utes, changed factual circumstances, and
confessions of error or other positions
newly taken by the Solicitor General, and
state attorneys general.

This practice has some virtues. In an ap-
propriate case, a GVR order conserves
the scarce resources of this Court that
might otherwise be expended on plenary
consideration, assists the court below by
flagging a particular issue that it does not
appear to have fully considered, assists
this Court by procuring the benefit of the
lower court's insight before we rule on the
merits, and alleviates the potential for
unequal treatment that is inherent in our
inability to grant plenary review of all
pending cases raising similar issues.
Where intervening developments, or re-
cent developments that we have reason to
believe the court below did not fully con-
sider, reveal a reasonable probability
that the decision below rests upon a
premise that the lower court would reject
if given the opportunity for further con-
sideration, and where it appears that
such a redetermination may determine
the ultimate outcome of the litigation, a
GVR order is, we believe, potentially ap-
propriate.

*Id.* at 166-67.

Critically, a GVR is "not a final determination on the merits." *Tyler v. Cain*, 533 U.S. 656, 666 n.6 (2001). Rather, it simply indicates that, "in light of intervening developments, there was a reasonable probability that the Court of Appeals would reject a legal premise on which it relied and which may affect the outcome of the litigation." *Id*.

"Waiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993).

## B.   Discussion

Nothing in the Supreme Court's GVR order directs this Court to ignore procedural bars, and nothing in the Hold Memo waives the Government's procedural defenses.

The Supreme Court's May 22, 2023 GVR order granted Binday's certiorari petition and remanded to this Court "for further consideration in light of *Ciminelli*." (Add. 5). Far from "recogniz[ing] that the government had chosen not to pursue procedural claims" (Br. 12), the GVR order said nothing about potential procedural defenses.

Binday's argument relies on the same strained interpretation of a standard GVR order that the Eleventh Circuit squarely rejected in *United States v. Ardley*, 242 F.3d 989 (11th Cir. 2001). There, the defendant was convicted; the Supreme Court issued its opinion in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), while the defendant's certiorari petition was pending on direct appeal; and the Supreme Court issued a GVR order that used the same language as the

17

GVR order in this case, *see Ardley v. United States*, 531 U.S. 1063 (2001) ("Judgment vacated, and case remanded to the United States Court of Appeals for the Eleventh Circuit for further consideration in light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000)."). After the GVR, the Eleventh Circuit rejected the defendant's *Apprendi* challenge on procedural grounds because the defendant had failed to raise the issue in his pre-*Apprendi* appeal briefs, and rejected any suggestion that the Supreme Court's GVR order required the Eleventh Circuit to ignore procedural defenses and reach the merits of the *Apprendi* issue. *See Ardley*, 242 F.3d at 990 ("Nor is there anything in the Supreme Court's remand order, which is cast in the usual language, requiring that we treat the case as though the *Apprendi* issue had been timely raised in this Court."). The Eleventh Circuit then denied rehearing, and, in terms directly applicable here, Judge Carnes wrote a concurrence explaining at length why GVR orders do not prevent circuit courts from addressing procedural issues. *See United States v. Ardley*, 273 F.3d 991, 994-95 (11th Cir. 2001) (Carnes, J., concurring); *see also United States v. Levy*, 416 F.3d 1273, 1279 (11th Cir. 2005) (holding the same and citing Judge Carnes's concurrence).

Here, as in *Ardley*, nothing in the GVR order suggests that the Supreme Court decided to bar all the Government's procedural defenses "and for some reason simply forgot to tell anyone." *Ardley*, 273 F.3d at 995 (Carnes, J., concurring). As discussed below, the procedural defenses in this case are grounded in statutes and Supreme Court precedent. Under Binday's theory, the Supreme Court overruled its own

18

precedent and invalidated the "second or successive" bar in Section 2255 when it issued a pro forma GVR order—the same type of GVR order it issues in large numbers every year, *see* Aaron-Andrew P. Bruhl, *The Supreme Court's Controversial GVRs—and an Alternative*, 107 Mich. L. Rev. 711, 719 (2009) (identifying more than 1,000 GVR orders over a 10-year period). There is no basis to believe that is what happened.

Moreover, Binday's theory is inconsistent with the Supreme Court's precedent that a GVR order is appropriate simply where intervening developments "reveal a *reasonable probability* that the decision below rests upon a premise that the lower court would reject if given the opportunity for further consideration, and where it appears that such a redetermination *may* determine the ultimate outcome of the litigation." *Lawrence*, 516 U.S. at 167 (emphases added).

Binday's theory also misapprehends the Supreme Court's role. The Supreme Court receives approximately 7,000-8,000 certiorari petitions each year, and it grants and hears oral argument on only approximately one percent of those petitions. *See* https://www.supremecourt.gov/about/faq_general.aspx (accessed October 28, 2023). The Supreme Court lacks the capacity to wade into fact-specific procedural defenses and rule on them in every case in which it issues a GVR order. *See Lawrence*, 516 U.S. at 167 ("a GVR order conserves the scarce resources of this Court that might otherwise be expended on plenary consideration . . . and alleviates the potential for unequal treatment that is inherent in our inability to grant plenary review of all pending cases raising similar issues"). No

19

authority suggests that the Supreme Court would or could make an individualized determination that no procedural defenses applied each time it issued a GVR order.

Binday's argument that the Hold Memo (Add. 1-4) waived the Government's procedural defenses is similarly meritless. To begin, it rests on a misstatement of the record. (*Compare* Br. 11 ("[the Government] told the Supreme Court that Binday's case *would be* affected by the decisions in *Ciminelli* and *Jones*") *with* Add. 3 ("Because this Court's resolution of the questions presented in both *Ciminelli* and *Jones may* affect the judgment of the court of appeals below, the Court should hold the petition for a writ of certiorari pending its decisions in those cases and then dispose of the petition as appropriate.") (emphases added)). The Solicitor General never told the Supreme Court that the outcome of Binday's case *would* be altered by *Ciminelli* or *Jones*. Further, nothing in the Hold Memo suggests that there was an "intentional relinquishment or abandonment of a known right" by the Government, as waiver requires. *Olano*, 507 U.S. at 733.

Binday's argument about waiver rests on the same flawed premise as his argument about the impact of the GVR order. The Hold Memo plainly contemplated that the Supreme Court might issue a GVR order based on *Ciminelli* or *Jones*. Because the Supreme Court issues such orders without deciding all the individualized procedural issues in cases, there was no reason for the Solicitor General to make individualized

20

procedural arguments that are far better suited for resolution by this Court.[5]

## POINT II

### Binday's Proposed Motion Is a Second or Successive Section 2255 Motion

Binday contends that the new habeas petition is not a "second or successive" motion. (Br. 13-24). Section 2255's plain language, existing precedent, and common sense prove otherwise.

_____

[5] Binday relies in part on *Buck v. Davis*, 580 U.S. 100 (2017). There, the Supreme Court granted certiorari on an ineffective-assistance-of-counsel issue, ordered briefing, and ultimately ruled on the merits of the ineffectiveness claim and held that the state had waived a procedural defense. *See id.* at 127. In *Buck*, the state failed to advance the procedural argument "in District Court, before the Fifth Circuit, or in the State's brief in opposition to Buck's petition for certiorari." *Id.* By contrast, here (1) the argument was omitted only in the Hold Memo in front of the Supreme Court; (2) for the reasons stated above, it made no sense for the Solicitor General to make those procedural arguments; and (3) the Hold Memo did not oppose certiorari, let alone file an opposition brief that waived arguments (Add. 1-4). In any event, *Buck* states that courts have the discretion to ignore the type of waiver that Binday asserts occurred here. *See id.*

21

## A. Applicable Law

Section 2255 provides a habeas corpus remedy for federal prisoners in the court that imposed sentence upon them. It states that a "second or successive" such habeas petition may proceed based on only (1) "newly discovered evidence," or (2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h).

Section 2255(e), frequently referred to as the "saving clause," lets federal prisoners file a habeas petition under the alternative habeas provision in 28 U.S.C. § 2241 if and only if the Section 2255 petition is "inadequate or ineffective."[6] Until recently, this Court considered a Section 2255 petition "inadequate or ineffective," such that a defendant could evade the second or successive bar and file a Section 2241 petition, if the defendant could make a threshold showing of factual innocence. *See, e.g., Dhinsa v. Krueger*, 917 F.3d 70, 80 (2d Cir. 2019) ("A petitioner who seeks to establish

---

[6]  Section 2241 recodifies the federal courts' original habeas corpus powers, which date back to the First Judiciary Act and allowed prisoners to file habeas petitions in the district of confinement, but not in the district where sentence was imposed. Section 2255 was enacted in 1948 so prisoners could challenge their detention in the sentencing district, which was far more administratively convenient, and the saving clause was included to cover instances in which that new process was "inadequate or ineffective." *See generally Jones*, 599 U.S. at 472-74.

habeas jurisdiction under this savings clause must make a threshold showing, based on the existing record, that he is innocent of his crime of conviction under a legal theory that was not previously available to him.").

That is no longer true. In *Jones*, the Supreme Court squarely considered and rejected the notion that "factual innocence" based on "a newly adopted narrowing interpretation of a criminal statute that circuit precent had foreclosed at the time of the prisoner's trial, appeal, and first § 2255 motion" allowed a defendant to invoke the saving clause:

> We now hold that the saving clause does not authorize such an end-run around AEDPA. In § 2255(h), Congress enumerated two—and only two—conditions in which a second or successive § 2255 motion may proceed. Because § 2255 is the ordinary vehicle for a collateral attack on a federal sentence, the straightforward negative inference from § 2255(h) is that a second or successive collateral attack on a federal sentence is not authorized unless one of those two conditions is satisfied.

*Id.* at 477-78. Similarly, the Supreme Court rejected the Government's argument that a defendant could invoke the saving clause upon "a colorable showing of factual innocence." *Id.* at 488-89. Thus, *Jones* held that, absent certain highly unusual circumstances not

23

present here,[7] a second or successive habeas petition may proceed only if it meets one of the strict requirements of Section 2255(h).

## B. Discussion

Binday argues that he is not subject to the bar on second or successive petitions because his petition is not, in fact, "second or successive." (Br. 13-22).[8] He is incorrect.

Binday filed a first Section 2255 motion in 2017, challenging his convictions on grounds of ineffective assistance of counsel. (Dkt. 420). The District Court denied that petition on the merits (Dkt. 448), and this Court denied Binday's motion for a certificate of appealability (No. 18-2143, Dkt. 45). Binday now seeks leave to file another habeas petition challenging the same judgment. The proposed motion is plainly a "second or successive" motion under 28 U.S.C. §§ 2255(h) and 2244(b)(3)(A). *See Vu v. United States*, 648 F.3d 111, 113 (2d Cir. 2011) ("Generally, to be successive, a second § 2255 motion must attack the same judgment that was attacked in the prior motion, and the prior

---

[7] The only two such circumstances the Supreme Court identified were (1) the dissolution of the sentencing court, or (2) the physical impossibility or impracticability of transporting a defendant to the sentencing court. *See Jones*, 599 U.S. at 474-75 & n.2.

[8] Before *Jones*, Binday styled his petition as one under both Sections 2255 and 2241. (App. Dkt. 1). Post-*Jones*, Binday no longer seeks relief under Section 2241.

24

motion must have been decided on the merits."); *Thai v. United States*, 391 F.3d 491, 494 (2d Cir. 2004) ("This Court has often stated that an initial petition will 'count' where it has been adjudicated on the merits or dismissed with prejudice.").

This Court held exactly that in 2021 when it considered Binday's habeas petition and rejected Binday's argument that his petition, based on the Supreme Court's then-recent decision in *Kelly*, was not second or successive:

> To the extent Petitioner's claim should be brought under § 2255, it would be successive within the meaning of § 2255(h) because Petitioner's first § 2255 motion challenged the same criminal judgment, was decided on the merits, and reached final adjudication before the filing of the present motion. *See Vu v. United States*, 648 F.3d 111, 113 (2d Cir. 2011); *Whab v. United States*, 408 F.3d 116, 118-19 (2d Cir. 2005). We reject Petitioner's argument that a claim based on *Kelly v. United States*, 140 S. Ct. 1565 (2020), would not be successive because that decision announced new law that was previously unavailable; § 2255(h) clearly covers that circumstance and the cases cited by Petitioner are inapposite.

(App. Dkt. 46).

Binday's attempts to evade the plain language of Section 2255(h) and this Court's prior ruling to claim

25

that he is not seeking leave to file a "second or successive" petition all fail.

*First*, Binday argues that the Court should relax the procedural bar because the petition does not constitute "abuse of the writ" by raising a claim that was or could have been asserted in the earlier petition. (Br. 14). But that exception would cover cases, like this one, where a defendant seeks relief from the non-constitutional narrowing of a criminal statute. That is precisely what *Jones* foreclosed. *See Jones*, 599 U.S. at 477-78.

*Second*, the cases Binday identifies in which the Supreme Court or this Court held that a subsequent petition was not "second or successive" within the language of the statute (Br. 13-16) are nothing like this one:

- In *Banister v. Davis*, 140 S. Ct. 1698 (2020), the Supreme Court held that the defendant's motion under Federal Rule of Criminal Procedure 59(e) to alter or amend the judgment of his original habeas petition within 28 days of the judgment was not a "second or successive" petition.

- In *Magwood v. Patterson*, 561 U.S. 320 (2010), the defendant was sentenced to death in state court; the District Court granted a habeas petition mandating his resentencing; and the state then resentenced him to death. The Supreme Court held that he could file a new habeas

petition challenging the second death sentence—even though he had filed a first habeas petition successfully challenging the first death sentence—because the subsequent petition challenged a new judgment.

- In *Panetti v. Quarterman*, 551 U.S. 930 (2007), the defendant was sentenced to death in state court and his federal habeas petition was denied. He then filed a second habeas petition raising a claim under *Ford v. Wainwright*, 477 U.S. 399 (1986), which prevents the execution of a prisoner who is insane. The Supreme Court held that he could file the second petition based on *Ford* because the claim was not factually ripe at the time of the first petition.

- In *Vu*, the defendant's counsel failed to file a direct appeal, and the defendant filed an initial, unsuccessful habeas petition seeking reinstatement of his right to appeal. The defendant then filed a subsequent habeas petition challenging his conviction and sentence, and this Court held that it was not "second or successive" because "an initial § 2255 or § 2254 petition seeking reinstatement of direct-appeal rights is not a challenge to the legality of the sentence imposed." 648 F.3d 114.

27

- In *Whab v. United States*, 408 F.3d 116 (2d Cir. 2005), the defendant filed a first habeas petition, which was denied. While his request for a certificate of appealability on the first habeas petition was pending, he filed a subsequent habeas petition. The Court held that the defendant's subsequent motion was not "second or successive" because his initial petition remained pending.

*Third*, Binday argues that a broad interpretation of "second or successive" would damage habeas practice. (Br. 21-22). By that, he appears to mean two things: that it would make habeas petitions more difficult, and that it could lead to inconsistency. But when Congress passed AEDPA, it made a deliberate choice to limit defendants' ability to file repeated habeas petitions. That AEDPA makes it more difficult for Binday to challenge his conviction in a subsequent habeas petition does not establish that Section 2255(h) means something other than what it says; it means that AEDPA is working as intended. As to inconsistency, AEDPA reflects a choice by Congress that second habeas petitions should be subject to far more stringent limitations than first habeas petitions. That choice necessarily creates a possibility of inconsistency based on when co-defendants file their initial petitions.

*Fourth*, Binday argues that treating his subsequent petition as "second or successive" would impede "finality and deterrence interests." (Br. 22-24). To be sure, "[t]he United States has an interest in the finality of sentences imposed by its own courts," *Jones*, 599

28

U.S. at 491, and courts consider that interest in habeas proceedings. But that interest counsels *against* allowing Binday to challenge his conviction yet again. As to deterrence, Binday identifies no authority that deterrence is a significant interest in habeas cases; he makes no argument as to his factual innocence; and he is not in fact innocent, *see infra* at Point IV. And even if interests in finality and deterrence favored Binday's argument, those interests could not overcome the plain language of the statute.

*Fifth*, Binday argues that subsequent petitions based on intervening changes to the law are not "second or successive" if the defendant (i) raised the same issue on direct appeal, and (ii) did *not* raise that issue in the first habeas petition. (Br. 17). Binday's argument primarily relies on *Jones v. Hendrix*—but the Eighth Circuit's opinion in that case, not the Supreme Court's. (Br. 17-18 (citing *Jones v. Hendrix*, 8 F.4th 683 (8th Cir. 2021))). And while the Eighth Circuit did discuss the defendant's failure to raise his claim based on *Rehaif v. United States*, 139 S. Ct. 2191 (2019), on direct appeal, it did so in the context of Section 2255(e)'s saving clause, not Section 2255(h)'s "second or successive" bar. *Jones* provides no support for Binday's argument—indeed, it precludes Binday from obtaining the very "end-run around AEDPA" that he pursues. *Jones*, 599 U.S. at 477. The other decision Binday relies on, *Cephas v. Nash*, 328 F.3d 98 (2d Cir. 2003), is similarly unhelpful to his argument. There, the defendant also sought to file a subsequent habeas petition based on an alleged intervening change in the law. But in *Cephas*, (i) the Court assumed that the subsequent petition was "second or successive," *see id.* at

102, (ii) the defendant cited to language about procedural default, *see id.* at 107, which is an entirely separate habeas defense from the "second or successive" bar, and (iii) the decision was based on an understanding of the saving clause, *see id.* at 104, that has been abrogated by *Jones*, *see* 599 U.S. at 477-78.

*Sixth*, Binday argues that the Supreme Court's GVR order would not have vacated this Court's 2021 judgment if his petition were indeed "second or successive." (Br. 19). As discussed *supra* in Point I, however, the Supreme Court does not adjudicate procedural defenses when it issues GVR orders.

## POINT III

### Binday's Proposed Motion Does Not Meet AEDPA's Gatekeeping Requirements for a Second or Successive Section 2255 Motion

As discussed above, Binday's proposed motion based on *Ciminelli* is a second or successive Section 2255 motion. Binday may not bring the proposed motion because it fails to meet AEDPA's gatekeeping provisions, which require this Court to certify that a second or successive motion asserts a claim based on either "newly discovered evidence" or "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court." 28 U.S.C. § 2255(h); *see also* 28 U.S.C. § 2244(b)(2). Binday's proposed motion meets neither requirement. Binday does not contend that his motion relies on newly discovered evidence, and it plainly does not. Instead, he argues that it relies on *Ciminelli*, which he claims announced a new rule of constitutional law that the Supreme Court has made

retroactive to cases on collateral review. (Br. 24-42).
That argument fails, however, because *Ciminelli* is not
a constitutional decision; it is a statutory decision that
interpreted the wire-fraud statute.

## A. Applicable Law

AEDPA "places stringent limits on a prisoner's
ability to bring a second or successive application for a
writ of habeas corpus." *Adams v. United States*, 155
F.3d 582, 583 (2d Cir. 1998). Specifically, a defendant
seeking to file a second or successive motion under Section
2255 must satisfy a two-part gatekeeping requirement.

First, the defendant must apply to this Court and
make a "prima facie" showing that, as relevant here,
his Section 2255 "claim relies on a new rule of constitutional
law, made retroactive to cases on collateral review
by the Supreme Court, that was previously unavailable."
28 U.S.C. §§ 2244(b)(2)(A), 2244(b)(3)(C),
2255(h)(2); *see also Bell v. United States*, 296 F.3d 127,
128 (2d Cir. 2002). A claim that relies on an intervening
Supreme Court decision interpreting a statute, rather
than the Constitution, does not satisfy that standard
even if the intervening decision narrows the meaning
of a substantive federal statute. *See, e.g.*, *Mata v.
United States*, 969 F.3d 91, 93-94 (2d Cir. 2020); *Triestman
v. United States*, 124 F.3d 361, 371-72 (2d Cir.
1997), *abrogated on other grounds by Jones*, 599 U.S.
465.

Second, if this Court certifies that an application
makes the requisite prima facie showing, then the district
court must independently assess whether the

31

claim asserted in the second or successive motion in fact "relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2244(b)(2)(A). The defendant bears the burden of demonstrating that AEDPA's gatekeeping requirements are met. *See* 28 U.S.C. §§ 2244(b)(2)(A), 2244(b)(4) (requiring dismissal of a claim in a successive section 2255 motion "unless the applicant shows that the claim" satisfies the requirements of Section 2244); *Galviz Zapata v. United States*, 431 F.3d 395, 399 (2d Cir. 2005). If the defendant fails to make that showing, AEDPA requires the district court to dismiss the claim. *See* 28 U.S.C. §§ 2244(b)(2)(A), 2244(b)(4); *see also Tyler*, 533 U.S. at 660-61 & n.3.

Thus, an initial finding by this Court that a defendant's application satisfies the prima facie standard is not a conclusion that the defendant's second or successive Section 2255 claim actually satisfies the strictures of Section 2244. *Massey v. United States*, 895 F.3d 248, 251 (2d Cir. 2018).

## B. Discussion

### 1. *Ciminelli* Is a Statutory Decision

The question presented in *Ciminelli* was "whether the Second Circuit's longstanding 'right to control' theory of fraud describes a valid basis for liability *under the federal wire fraud statute*." *Ciminelli*, 598 U.S. at 308 (emphasis added). The defendant "challenged the right-to-control theory, arguing that the right to control one's assets is not 'property' *for purposes of the wire fraud statute*." *Id.* at 311 (emphasis added).

32

Answering the question required the Supreme Court to address the meaning of "obtaining money or property" under 18 U.S.C. § 1343, *see Ciminelli*, 598 U.S. at 312-17. Plainly, *Ciminelli* resolved a question of statutory interpretation; it did not announce a new rule of constitutional law.

The *Ciminelli* Court applied traditional canons of statutory construction, which included examining the text, structure, and history of the wire-fraud statute. It looked to the "original meaning of the text," *id.* at 312, concluding that that "[t]he so-called 'right to control' is not an interest that had 'long been recognized as property' when the wire fraud statute was enacted," *id.* at 314. It analyzed other federal statutes, concluding that "[t]he right-to-control theory is … inconsistent with the structure and history of the federal fraud statutes." *Id.* at 315. And it examined legislative history behind Congress's enactment of 18 U.S.C. § 1346, concluding that it "forecloses the expansion of the wire fraud statute to cover the intangible right to control." *Ciminelli*, 598 U.S. at 315.

With reasoning and analysis based almost entirely on principles of statutory construction, *Ciminelli* is substantially similar to other Supreme Court decisions that this Court has concluded involved questions of statutory—and not constitutional—interpretation. For example, this Court held that the Supreme Court "was simply construing a statute" in *Rehaif*, which "applied a standard 'interpretive maxim' to discern 'congressional intent' about the meaning of the word 'knowingly' as it appears in the text of § 922(g)." *Mata*, 969 F.3d at 93 (quoting *Rehaif*, 139 S. Ct. at 2195).

33

Similarly, this Court held that *Mathis v. United States*, 579 U.S. 500 (2016), was a statutory decision even though it was based in part on constitutional concerns. *See Washington v. United States*, 868 F.3d 64, 66 (2d Cir. 2017); *see also Mathis*, 579 U.S. at 511 (rejecting possible construction of statute that would "raise serious Sixth Amendment concerns"). Like *Ciminelli*, *Mathis* anchored its reasoning on traditional canons of statutory interpretation, including analyzing the text of the statute and ascertaining legislative intent. *See Mathis*, 579 U.S. at 510-12. And this Court held that a defendant was not authorized to file a second or successive motion based on *Johnson v. United States*, 559 U.S. 133 (2010) ("*Johnson I*"), because that decision interpreted only the force clause of the Armed Career Criminal Act ("ACCA") and "did not announce a new rule of constitutional law." *Massey*, 895 F.3d at 252. *Massey* rejected the defendant's attempt to bootstrap his *Johnson I* statutory claims onto the new constitutional rule announced in *Johnson v. United States*, 576 U.S. 591 (2015) ("*Johnson II*"), which held that ACCA's residual clause violated Constitutional right to due process. *See Massey*, 895 F.3d at 252.

## 2. References to Constitutional Principles Do Not Mean that *Ciminelli* Announced a New Rule of Constitutional Law

Although *Ciminelli* is devoted to construing whether the wire fraud statute recognizes the right to control one's assets as "property" and does not engage in any constitutional analysis, Binday argues that the decision announces a new rule of constitutional law because it relies on "constitutional principles." (Br. 25-

34

27). According to Binday, those constitutional princi-
ples include "federalism, overbreadth, ambiguity, due
process prohibitions on constructive offenses, and the
rule of lenity." (Br. 27). That argument fails for multi-
ple reasons.

Contrary to Binday's assertion, *Ciminelli* did not
invoke lenity, ambiguity, or due process prohibitions
on constructive offenses. And while the Court did note
that the right-to-control theory could cover conduct
"traditionally left to state contract and tort law," it re-
lied on established precedent for that concern. *Ci-
minelli*, 598 U.S. at 315-16 (citing *Cleveland*, 531 U.S.
at 27, and *Kelly*, 140 S. Ct. at 1574). Thus, while the
Court's interpretation of the wire fraud statute was
guided in part by federalism concerns, that does not
change the conclusion that the Court was construing a
statute, not a constitutional provision. *See Washing-
ton*, 868 F.3d at 66 (explaining that although interven-
ing statutory ruling "had been based in part on consti-
tutional concerns, those concerns did not reflect a new
rule").

Finding nothing in *Ciminelli* or any other case to
support the claim that *Ciminelli* announced a new con-
stitutional rule, Binday resorts to citing the concur-
rence in *United States v. Porat*, 76 F.4th 213 (3d Cir.
2023). As an initial matter, *Porat* reached the Third
Circuit in an entirely different posture—through a di-
rect appeal of a wire fraud conviction—and the court
upheld the conviction because sufficient evidence
showed that the defendant had trumpeted a school's
knowingly false, inflated rankings to entice victims to
pay tuition money. *See id.* at 219. Judge Krause's

35

concurrence in *Porat* likewise concluded that the object of the defendant's fraud was money in the form of tuition fees, and she highlighted the recognition in Supreme Court cases like *McNally, Skilling*, *Kelly*, and *Ciminelli* that federal fraud statutes are limited to protecting property rights. *See id.* at 224 (Krause, J., concurring). Judge Krause noted that "important constitutional principles undergird this jurisprudence," *id.* at 225, but nothing in her concurrence or *Porat*'s majority opinion suggests that *Ciminelli* announced a new rule of constitutional law that could provide the basis for a successive habeas petition. And as discussed above, this Court has recognized that an intervening statutory decision may account for constitutional concerns or principles without announcing a new constitutional rule. *See Washington*, 868 F.3d at 66; *see also Garcia v. United States*, 923 F.3d 1242, 1244 (9th Cir. 2019) ("Even if the Court believed that a contrary reading of the statute would raise due process concerns, that would not suffice, for it is the 'new rule' itself that must be one 'of constitutional law' . . . .").

*Jones* brings the need to distinguish between constitutional and nonconstitutional claims into sharp relief. In that case, the Court reiterated that AEDPA's restrictions on second and successive Section 2255 motions are intended to bar nonconstitutional claims, and emphasized that "§ 2255(h)(2)'s authorization of a successive collateral attack based on new rules 'of constitutional law' implies that Congress did not authorize successive collateral attacks based on new rules of nonconstitutional law. Had Congress wished to omit the word 'constitutional,' it easily could have done so."

*Jones*, 599 U.S. at 478. If Binday's suggestion that the Supreme Court announces a new rule of constitutional law every time it draws on constitutional principles in interpreting a criminal statute were accepted, the distinction between constitutional and nonconstitutional decisions under Section 2255(h)(2) would be meaningless.

### 3. The Cases *Ciminelli* Cites Do Not Show that *Ciminelli* Announced a New Rule of Constitutional Law

Binday also argues that *Ciminelli* announced a new rule of constitutional law because it relied on "constitutional decisions" that applied constitutional principles. (Br. 27). But Binday offers no authority to support his claim that a decision interpreting statute and not the Constitution announces a new rule of *constitutional* law if it cites constitutional decisions. Moreover, none of the cases Binday highlights (Br. 27-29) announces a new rule of constitutional law:

- *Cleveland* was a statutory decision that addressed whether the mail fraud statute reaches false statements in an application for a state license. *See* 531 U.S. at 15. *Cleveland* took federalism considerations into account only to inform its interpretation of a statute, *see id.* at 24, and it explicitly stated that it was relying on principles of lenity as an "interpretive guide" in "construing § 1341," *id.* at 25.

- This Court has already rejected the claim, raised in Binday's prior Section

37

2255 motion, that *Kelly* introduced a new
rule of constitutional law. (App. Dkt. 46
("*Kelly* interpreted a statute and did not
rely on any constitutional provision.")).

- *McNally v. United States*, 483 U.S. 350
(1987), discerned Congress's intent in en-
acting the mail fraud statute and held
that Congress never intended to make
certain acts criminal. *See id.* at 360 ("Ra-
ther than construe the statute in a man-
ner that leaves its outer boundaries am-
biguous and involves the Federal Govern-
ment in setting standards of disclosure
and good government for local and state
officials, we read § 1341 as limited in
scope to the protection of property
rights.").

- *United States v. Sadler*, 750 F.3d 585 (6th
Cir. 2014), refers to adopting a more leni-
ent reading of a statute as a canon of stat-
utory interpretation. *See id.* at 592 (con-
cluding that Congress's silence about
whether the Section 1343 covers a right
to accurate information "requires [the
court] to pick the more lenient reading of
the wire-fraud law").

\* \* \*

Binday's attempts to contort the statutory ruling in
*Ciminelli* to overcome AEDPA's bar on second or suc-
cessive nonconstitutional claims all fail. *Ciminelli* in-
terprets a statute, addressing whether the right to

38

control one's assets is "property" for the purposes of the wire fraud statute. It does not announce "a new rule of constitutional law" under Section 2255(h)(2). Accordingly, this Court should not authorize Binday to file second or successive motion.

## POINT IV

### Binding Precedent Forecloses Binday's Motion to Recall the Mandate

Binday requests, in the alternative, that this Court recall the eight-year-old mandate it issued in *Binday*, 804 F.3d 558. (Br. 42-45). Under binding precedent, however, a defendant may not use a motion to recall the mandate to avoid the "second or successive" requirement of Section 2255. That precedent compels the Court to deny Binday's motion.

### 1. Applicable Law

A petitioner challenging his criminal convictions "cannot evade the successive petition restrictions of 28 U.S.C. § 2255 . . . by framing his claims as a motion to recall the mandate." *Bottone v. United States*, 350 F.3d 59, 63 (2d Cir. 2003). "[W]hen a defendant moves to recall the mandate based on intervening precedent that calls into question the merits of the decision affirming his conviction, we construe the motion as one to vacate the defendant's sentence pursuant to 28 U.S.C. § 2255." *United States v. Fabian*, 555 F.3d 66, 68 (2d Cir. 2009); *accord United States v. Redd*, 735 F.3d 88, 90 (2d Cir. 2013); *see also Calderon v. Thompson*, 523 U.S. 538, 553 (1998) (holding that prisoners may not use motions to recall the mandate to evade

39

requirements for second or successive Section 2254 petitions). The rule is consistent with the principle that the power to recall a mandate "is to be exercised sparingly and reserved for exceptional circumstances," a limitation that recognizes "the sanctity of final judgments in our federal judicial system." *Sargent v. Columbia Forest Prod., Inc.*, 75 F.3d 86, 89 (2d Cir. 1996).

### 2. Discussion

Under *Bottone*, *Fabian*, and *Redd*, Binday's motion to recall the mandate must be construed as a motion under Section 2255. And because the motion is a second or successive petition under Section 2255, *see supra* at Point II, and Binday does not satisfy the requirements for a second or successive Section 2255 petition, *see supra* at Point III, the motion must be denied.

Binday does not address this Court's rule that the "second or successive" bar of Section 2255 applies to a motion to recall the mandate. Citing primarily civil cases in which Section 2255 has no applicability, he argues that equitable factors identified in those cases might justify his claim of relief. Those equitable factors are beside the point given the holdings of *Bottone*, *Fabian*, and *Redd*.

But even if the Court were to consider those factors, the motion to recall the mandate should be denied because Binday violated the wire fraud statute even as interpreted by *Ciminelli*. Binday's scheme to defraud was designed to obtain money from the victim insurance companies. *See Binday*, 804 F.3d at 567 (fraud generated $11.7 million in commissions paid by

40

insurers to defendants); *id.* at 585 (recognizing that
"[c]omission payments" were "the object of the
scheme"); *id.* ("From the indictment through the trial,
the government consistently maintained that defend-
ants sought to obtain money (in the form of commis-
sions) from the victim insurers . . . ."). While rejecting
the right-to-control theory as a basis for wire-fraud li-
ability, the *Ciminelli* Court reaffirmed that the fraud
statutes reach traditional property interests.

Thus, the fraud statutes continue to reach schemes
with money as the object. *See, e.g.*, *Ciminelli*, 598 U.S.
at 312 (Government must prove that "money or prop-
erty was an object of the[ ] fraud"); *Kelly*, 140 S. Ct. at
1573 (noting that schemes with government "cash" or
employee labor as the object are valid); *Pasquantino v.
United States*, 544 U.S. 349, 357 (2005) ("scheme
aimed at depriving [government] of money" was valid).
Because the Government proved at trial "not only that
[Binday] engaged in deception, but also that money or
property was an object of the[ ] fraud," *Ciminelli*, 598
U.S. at 312, Binday was in fact guilty of the offense of
conviction, so the equitable factors do not favor a recall
of the mandate.

41

## CONCLUSION

**Binday's motions for authorization to file a Section 2255 motion and to recall the mandate should be denied.**

Dated:     New York, New York
           November 13, 2023

Respectfully submitted,

DAMIAN WILLIAMS,
*United States Attorney for the*
*Southern District of New York,*
*Attorney for the United States*
*of America.*

CONNIE L. DANG,
KEVIN MEAD,
DAVID ABRAMOWICZ,
   *Assistant United States Attorneys,*
       *Of Counsel.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this brief complies with the type-volume limitation of the Federal Rules of Appellate Procedure and this Court's Local Rules. As measured by the word processing system used to prepare this brief, there are 9,107 words in this brief.

DAMIAN WILLIAMS,
*United States Attorney for the*
*Southern District of New York*

By: DAVID ABRAMOWICZ,
*Assistant United States Attorney*

**ADDENDUM**

**Add. 1**

**No. 21-1241**

# In the Supreme Court of the United States

———————

MICHAEL L. BINDAY, PETITIONER

*v.*

UNITED STATES OF AMERICA

———————

*ON PETITION FOR A WRIT OF CERTIORARI*
*TO THE UNITED STATES COURT OF APPEALS*
*FOR THE SECOND CIRCUIT*

———————

**MEMORANDUM FOR THE UNITED STATES**

———————

ELIZABETH B. PRELOGAR
*Solicitor General*
*Counsel of Record*
*Department of Justice*
*Washington, D.C. 20530-0001*
*SupremeCtBriefs@usdoj.gov*
*(202) 514-2217*

**Add. 2**

# In the Supreme Court of the United States

———

No. 21-1241

MICHAEL L. BINDAY, PETITIONER

*v.*

UNITED STATES OF AMERICA

———

*ON PETITION FOR A WRIT OF CERTIORARI*
*TO THE UNITED STATES COURT OF APPEALS*
*FOR THE SECOND CIRCUIT*

———

**MEMORANDUM FOR THE UNITED STATES**

———

Petitioner contends (Pet. 19-30) that the court of appeals erred in denying his motion for leave to file a habeas petition under 28 U.S.C. 2241 challenging his convictions for mail and wire fraud. A federal prisoner may seek relief under Section 2241 only if a motion under Section 2255 itself is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. 2255(e). The Second Circuit has concluded that Section 2255(e) is limited to "cases involving prisoners who (1) can prove 'actual innocence on the existing record,' and (2) 'could not have effectively raised their claims of innocence at an earlier time.'" *Cephas* v. *Nash*, 328 F.3d 98, 104 (2003) (brackets and citation omitted).

Here, petitioner contended that he was actually innocent. He asserted that his fraud convictions were based on the theory that a defendant commits fraud if he "denies the victim the right to control its assets by

(1)

**Add. 3**

2

depriving it of information necessary to make discretionary economic decisions," Pet. App. 47 (brackets and citation omitted), and that *Kelly* v. *United States*, 140 S. Ct. 1565 (2020), had invalidated that theory. The court of appeals denied petitioner's motion for leave to file, reasoning that it had "recently upheld the theory of conviction challenged by" petitioner and finding that he had "not otherwise shown that his case is covered by" *Kelly*. Pet. App. 2-3 (citing *United States* v. *Gatto*, 986 F.3d 104, 125-127 (2d Cir.), cert. denied, 142 S. Ct. 710 (2021)).

This Court has granted review in *Ciminelli* v. *United States*, No. 21-1170 (June 30, 2022), to determine the validity of the "Second Circuit's 'right to control' theory of fraud" under the federal wire-fraud statute. Pet. at i, *Ciminelli*, *supra* (No. 21-1170). It has also granted review in *Jones* v. *Hendrix*, No. 21-857 (oral argument scheduled for Nov. 1, 2022), to address the circumstances in which a federal prisoner may be entitled to seek relief under Section 2241 on the ground that his conviction is invalid under an intervening retroactive decision of statutory interpretation. Pet. at i, *Jones*, *supra* (No. 21-857). Because this Court's resolution of the questions presented in both *Ciminelli* and *Jones* may affect the judgment of the court of appeals below, the Court should hold the petition for a writ of certiorari pending its decisions in those cases and then dispose of the petition as appropriate.*

---

\* The government waives any further response to the petition for a writ of certiorari unless this Court requests otherwise.

**Add. 4**

3

Respectfully submitted.

ELIZABETH B. PRELOGAR
*Solicitor General*

SEPTEMBER 2022

# Add. 5

## Supreme Court of the United States

No. 21–1241

**MICHAEL L. BINDAY,**

Petitioner

v.

**UNITED STATES**

**ON PETITION FOR WRIT OF CERTIORARI** to the United States Court of Appeals for the Second Circuit.

**THIS CAUSE** having been submitted on the petition for writ of certiorari and the response thereto.

**ON CONSIDERATION WHEREOF**, it is ordered and adjudged by this Court that the petition for writ of certiorari is granted. The judgment of the above court in this cause is vacated with costs, and the case is remanded to the United States Court of Appeals for the Second Circuit for further consideration in light of *Ciminelli* v. *United States*, 598 U. S. ___ (2023).

**IT IS FURTHER ORDERED** that the petitioner, Michael L. Binday, recover from the United States, Three Hundred Dollars ($300.00) for costs herein expended.

May 22, 2023



A True copy SCOTT S. HARRIS
Clerk of the Supreme Court of the United States