# 21-1206

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

*Michael Binday,*
*Petitioner,*

*—against—*

*United States of America,*
*Respondent.*

ON MOTION TO VACATE CONVICTION
FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK, Doc. No. 12-cr-152 (CM)

**REPLY BRIEF OF PETITIONER MICHAEL BINDAY
ON REMAND FROM THE UNITED STATES SUPREME COURT**

David W. Shapiro
The Norton Law Firm
299 Third Street, Suite 200
Oakland, CA 94607
(510) 906-4906
Attorneys for Petitioner Michael Binday

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................3

I.  INTRODUCTION ...............................................................8

II.  FACTS ..........................................................................8

III.  WAIVER AND THE LIMITS OF THIS COURT'S REVIEW ..................10

A.  PROCEDURAL HISTORY IN THE SUPREME COURT ......................10

B.  THE GOVERNMENT WAIVER ............................................11

C.  THE LIMITS ON THIS COURT'S REVIEW .........................................15

IV.  BINDAY'S PROPOSED MOTION IS NOT A SECOND OR
SUCCESSIVE 2255 MOTION ...............................................16

V.  CIMINELLI IS A RETROACTIVE CONSTITUTIONAL DECISION......25

VI.  THIS COURT MAY RECALL THE MANDATE FROM BINDAY'S
DIRECT APPEAL ...............................................................29

VII.  CONCLUSION ...............................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Robertson,*
  520 U.S. 83 ................................................................................12

*Baldwin v. Reese,*
  541 U.S. 27 (2004) .....................................................................12

*Banister v. Davis,*
  140 S. Ct. 1698 (2020) .........................................................15, 20

*Billy-Eko v. United States,*
  8 F.3d 111 (2d Cir. 1993) ...........................................................16

*Bousley v. United States,*
  523 U.S. 614 (1998) ...................................................................16

*Brumfield v. Cain,*
  576 U.S. 305 (2015) ...................................................................12

*Carcieri v. Salazar,*
  555 U.S. 379 (2009) ...................................................................13

*Ciminelli v. United States,*
  598 U.S. 306 (2023) ............................................................ Passim

*Cobb v. United States,*
  2019 WL 2607002 (E.D.N.Y. 2019) ...........................................18

*Cone v. Bell,*
  556 U.S. 449 (2009) ...................................................................24

*Cook v. United States,*
  84 F.4th 118 (2d Cir. 2023) ........................................................19

*Davis v. United States,*
  417 U.S. 333 (1974) ........................................................18, 19, 20

*Dretke v. Haley,*
  541 U.S. 386 (2004) ...................................................................13

*Dubin v. United States*,
599 U.S. 110 (2023) ......................................................................25

*Escalera v. Coombe*,
852 F.2d 45 (2d Cir. 1988) ..........................................................15

*Fabian v. United States*,
2007 WL 2480164 (E.D.N.Y. 2007) ............................................28

*Fasulo v. United States*,
272 U.S. 620 (1926) ......................................................................26

*Granberry v. Greer*,
481 U.S. 129 (1987) ......................................................................13

*Grzegorczyk v. United States*,
142 S. Ct. 2580 (2022) ..................................................................11

*Hermann v. Brownell*,
274 F.2d 842 (9th Cir. 1960) ........................................................15

*Ingber v. Enzor*,
841 F.2d 450 (2d Cir. 1988) ........................................................26

*Johnson v. Manhattan Ry. Co.*,
61 F.2d 934 (2d Cir. 1932) ..........................................................18

*Johnson v. United States*,
576 U.S. 591 (2015) ......................................................................26

*Jones v. Hendrix*,
599 U.S. 465 (2023) ......................................................................19

*Kemp v. United States*,
142 S. Ct. 1856 (2022) ..................................................................18

*Knowles v. Iowa*,
525 U.S. 113 (1998) ......................................................................12

*Kotler v. Am. Tobacco Co.*,
981 F.2d 7 (1st Cir. 1992) ............................................................15

*Lawrence v. Chater*,
516 U.S. 163 (1996) ......................................................................14

*Magwood v. Patterson*,
561 U.S. 320 (2010) ......................................................................16

*Martinez v. Ryan*,
566 U.S. 1 (2012) ..........................................................................22

*Massaro v. United States*,
538 U.S. 500 (2003) ...................................................................16

*McNally v. United States*,
483 U.S. 350 (1987) ...................................................................26

*Oklahoma City v. Tuttle*,
471 U.S. 808 (1985) ...................................................................12

*Padilla v. Kentucky*,
559 U.S. 356 (2010) ...................................................................22

*Perez v. Mortg. Bankers Ass'n*,
575 U.S. 92 (2015) .....................................................................12

*Prost v. Anderson*,
636 F.3d 578 (10th Cir. 2011) ..............................................20, 21

*Roper v. Weaver*,
550 U.S. 598 (2007) ...................................................................12

*S. Cent. Bell Tel. Co. v. Alabama*,
526 U.S. 160 (1999) ...................................................................12

*Sanders v. United States*,
373 U.S. 1 (1963) ................................................................15, 20

*Sosa v. Alvarez-Machain*,
542 U.S. 692 (2004) ...................................................................17

*Stutson v. United States*,
516 U.S. 193 (1996) ...................................................................23

*Triestman v. United States*,
124 F.3d 361 (2d Cir. 1997) ......................................................19

*United States v. Aquart*,
912 F.3d 1 (2d Cir. 2018) ..........................................................11

*United States v. Ardley*,
242 F.3d 989 (11th Cir. 2001) ...........................................13, 14, 15

*United States v. Binday*,
804 F.3d 558 (2d Cir. 2015) .......................................................7, 8

*United States v. Bruchhausen*,
977 F.2d 464 (9th Cir. 1992) .........................................................8

*United States v. Hansen*,
599 U.S. 762 (2023) ...................................................................21

*United States v. McDowell*,
  745 F.3d 115 (4th Cir. 2014) ................................................................................ 18

*United States v. Peterson*,
  394 F.3d 98 (2d Cir. 2005) .................................................................................... 25

*United States v. Porat*,
  76 F.4th 213 (3d Cir. 2023) ................................................................................... 27

*United States v. Redd*,
  735 F.3d 88 (2d Cir. 2013) .................................................................................... 28

*United States v. Restrepo*,
  986 F.2d 1462 (2d Cir. 1993) ................................................................................ 11

*United States v. Salvatore*,
  110 F.3d 1131 (5th Cir. 1997) .............................................................................. 28

*United States v. Salvatore*,
  2001 WL 263112 (E.D. La. Mar. 15, 2001) ......................................................... 28

*United States v. Schwartz*,
  924 F.2d 410 (2d Cir. 1991) .................................................................................... 8

*United States v. Shelton*,
  400 F.3d 1325 (11th Cir. 2005) ............................................................................ 14

*Vu v. United States*,
  648 F.3d 111 (2d Cir. 2011) .................................................................................. 17

*Wani Site v. Holder*,
  656 F.3d 590 (7th Cir. 2011) ................................................................................ 14

*Welch v. United States*,
  578 U.S. 120 (2016) ........................................................................................ 26, 27

*Wood v. Milyard*,
  566 U.S. 463 (2012) .............................................................................................. 13

*Yates v. United States*,
  574 U.S. 528 (2015) .............................................................................................. 25

## Statutes

28 USC § 2255(d) .......................................................................................................... 18

28 USC § 2255(e) ...................................................................................................... 19, 20

28 USC § 2255 ...................................................................................................... 19, 20, 21

**Rules**

Fed. R. App. P. 32(a)(5) ............................................................30

Fed. R. App. P. 32(a)(6) ............................................................30

Fed. R. App. P. 32(f) ..................................................................30

FRAP 36 (appeal) ......................................................................18

FRCP 54 (habeas) ......................................................................18

FRCP Rule 60 .............................................................................18

FRCrP 32(k) (conviction) ...........................................................18

## Other Authorities

*An Empirical Analysis of Supreme Court Certiorari Petition Procedures: The Call for Response and the Call for the Views of the Solicitor General,*
16 Geo. Mason L. Rev. 237 (2009) ........................................9

## I.    INTRODUCTION

Michael Binday challenged right to control ("RTC) fraud at trial, on appeal, in his first filed 2255 motion, and multiple times in the Supreme Court.  His first 2255 motion should have been unnecessary:  this Court should have recognized that RTC was invalid, granted Binday's en banc petition, and reversed his conviction.  In May 2023, the Supreme Court finally vindicated his position: knowing Binday's procedural history, it granted certiorari, vacated this Court's judgment, and remanded ("GVR") to this Court to consider Binday's case in light of *Ciminelli v. United States,* 598 U.S. 306 (2023).  Binday is entitled to relief.

## II.    FACTS

The government's fact recitation is distorted.

First, the government improperly relies on this Court's opinion in *United States v. Binday,* 804 F.3d 558, 570 (2d Cir. 2015) (hereafter, "*Binday*") for the facts proved at trial.  That opinion only marshaled the facts favorable to the government in support of its RTC sufficiency of the evidence review; it did not make findings of fact.  It was abrogated by *Ciminelli* and thus its reasoning and collection of facts were "eliminated." Opening Brief ("Br.") at 12-13.

Second, the government claims its hold memo preserved any procedural defense to Binday's 2255 motion. There is nothing in that memo even implying it sought to do so.

Third, investors may "bet" on insureds' lives, Opp. at 4, but so do insurers. Insurers bet people won't die too soon; they bet people will stop paying premiums; and they bet that they can profit by investing premiums. Their financial goal is to collect premiums from policy owners who "have the means to buy this policy, not just the initial premium, but future premiums" (Tr. 529: 24-25).  There was no evidence at trial that insurers returned the paid premiums to policy owners.  Binday

thus did not steal commissions; he *earned* commissions by selling insurance at the insurers' set price.

Fourth, contrary to the government's suggestion (Opp. at 8), Binday raised his challenge to RTC fraud on direct appeal. He argued that the "mere fact that an insurance company would not have issued a policy had it known the truth does not make this a federal crime." *United States v. Binday*, No. 14-2809, Doc. 93 at 24. In his reply, he argued that this Court's RTC decision in *United States v. Schwartz*, 924 F.2d 410, 421 (2d Cir. 1991), conflicted with *United States v. Bruchhausen*, 977 F.2d 464, 467 (9th Cir. 1992). *Binday*, No. 14-2809, Doc. 136 at 7-8. His en banc petition squarely attacked RTC.

Fifth, Binday's first 2255 motion challenged RTC. *See Binday v. United States*, 17-cv-04723-CM, Doc. 1-1 at 3 (reciting en banc challenge to RTC), 3-4 (reciting certiorari challenge to RTC), and 12 CR 152-CM, Doc. 446 at 5-6 ("the right to control theory is inconsistent with United States Supreme Court precedent …. Binday expressly does not waive his right to re-assert his objection to the right to control theory in a future proper forum—particularly as a claim of actual innocence in a petition for writ of habeas corpus.").

He sought review of his 2255 motion in the Supreme Court and challenged RTC there again. *Binday v. United States*, No. 19-273 (SC), at ii *et seq.*, [supremecourt.gov/DocketPDF/19/19-273/113823/20190827154823029_Brief.pdf](supremecourt.gov/DocketPDF/19/19-273/113823/20190827154823029_Brief.pdf)

Finally, the government fails to acknowledge that this Court appears to have recalled the mandate relating to Binday's first motion for a certificate of appealability, *Binday v. United States*, 18-2143 (2d Cir. 2019) Docs. 45 and 80. *See Binday v. United States*, No. 17-cv-04723-CM (SDNY), Doc. 19.

This Court thus has Binday's first and second 2255 motions before it.

## III.  WAIVER AND THE LIMITS OF THIS COURT'S REVIEW

Binday explained that (a) the remand to this Court is limited to the effect of *Ciminelli* on Binday's case and (b) the government waived any procedural hurdle of section 2255(e).

The government ignores the first point and thus concedes it.  Its waiver argument is meritless.

## A. PROCEDURAL HISTORY IN THE SUPREME COURT

Ciminelli and Binday filed their certiorari petitions on February 18 and March 10, 2022, respectively.

On March 23, 2022, the government waived a response to Binday's petition. *Binday v. United States*, No. 21-2241 (SC March 23, 2022).

On May 24, 2022, the government filed its opposition to certiorari in *Ciminelli* arguing in support of RTC fraud. Ciminelli filed his reply on June 6, 2022.

On June 21, 2022, and after considering Binday's petition at two conferences, the Court called for a response ("CFR") to Binday's petition.  "When a CFR is issued, it is a strong sign that the Court is interested in hearing argument in a case." David C. Thompson & Melanie F. Wachtell, *An Empirical Analysis of Supreme Court Certiorari Petition Procedures: The Call for Response and the Call for the Views of the Solicitor General*, 16 Geo. Mason L. Rev. 237, 250 (2009).

A CFR in Binday's circumstances is rare: "[E]ven when the Court's interest is piqued by a cert petition to which the SG did not respond, it rarely turns out that the case is worthy of a grant after all." *Id*. at 259. "The Court calls for a response from the United States in 2.2% of cases in which the SG waived response."  *Id*. at 260.

On June 30, 2022, the Court granted certiorari in *Ciminelli*, and the Ciminelli defendants filed merits briefs on August 29, 2022.

After reviewing the *Ciminelli* briefs, on September 21, 2022, and knowing that it had previously claimed Binday's new 2255 motion was procedurally barred, the government filed its hold memo in response to the CFR.

Binday filed his response to the hold memo on October 4, 2022 and offered to brief any procedural issues. Exhibit 1. The government did not ask to supplement its hold memo under Rule 15.8.

On October 12, 2022, the government filed its merits brief in *Ciminelli*. It conceded that the RTC theory yielded "over-broad results that would expand property fraud beyond its definition at common law and as Congress would have understood it." Brief for US at 12. [20221012202656269_21-1170bsUnitedStates FINAL.pdf (supremecourt.gov)](#) It further conceded that this Court has been inconsistent in its requirements for RTC fraud. *Id*. at 14. Later, it stated: "to the extent that language in the court's opinions might suggest that depriving a victim of economically valuable information, without more, necessarily qualifies as 'obtaining money or property' within the meaning of the fraud statutes, that is incorrect." *Id*. at 24. It said the core of the cases (like *Binday*) involved "fraudulent inducement," and it included a truncated, and misleading, quote from *Binday* to make it appear the Second Circuit relied on "commission payments" as the "money" object of the scheme. *Id*. at 24. The government spent four pages of its brief on this Court's decision in *Binday*.

### B. THE GOVERNMENT WAIVER

Supreme Court Rule 15.2 requires the respondent to a certiorari petition to "address any perceived misstatement of fact or law in the petition that bears on what issues properly would be before the Court if certiorari were granted. Counsel are admonished that they have an obligation to the Court to point out in the brief in opposition, and not later, any perceived misstatement made in the petition. Any objection to consideration of a question presented based on what occurred in the

proceedings below, if the objection does not go to jurisdiction, may be deemed waived unless called to the Court's attention in the brief in opposition."

The government claims Binday cited no cases in support of his waiver argument. Opp at 14. In fact, he cited *Buck v. Davis* and the government's own concession in *Grzegorczyk v. United States,* 142 S. Ct. 2580, 2582 (2022). Br. at 22-23. The government consigns its argument about *Buck* to a footnote (Opp. at 20 n. 5), and this Court should therefore not consider it. *See United States v. Restrepo*, 986 F.2d 1462, 1463 (2d Cir. 1993) ("We do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review."); *United States v. Aquart*, 912 F.3d 1, 16 (2d Cir. 2018) ("We do not decide the question here because … the government urges a lesser standard only in a footnote.").

In any event, the government's *Buck* footnote is meritless. It claims it "only" left out its procedural argument in the Supreme Court, but that only shows it knew about the argument and chose not to raise it. It therefore "made sense" for the Solicitor General to drop any procedural bar because that is what it does when it believes a conviction is invalid. (In *Grzegorczyk*, the government waived any reliance on the petitioner's unconditional guilty plea, even though it had raised that objection below. *See* Brief for the United States at 10, 20220311104356488_21-5967 Grzegorczyk vf.pdf (supremecourt.gov).)

The government concedes that its hold memo "contemplated" that the Supreme Court would grant Binday's certiorari petition, so it cannot seriously argue that the hold memo implicitly preserved an allegedly dispositive procedural defense unrelated to *Ciminelli*. It contends this Court is somehow "better suited" to decide the procedural issue. Opp at 19-20. No Supreme Court case supports that kind of court-shopping. *Buck* said the opposite.

The Supreme Court regularly criticizes respondents for omitting procedural defenses from certiorari responses. "Under this Court's Rule 15.2, 'a nonjurisdictional argument not raised in a respondent's brief in opposition to a petition for a writ of certiorari may be deemed waived.'" *Baldwin v. Reese*, 541 U.S. 27, 34 (2004) (citation omitted). *See Adams v. Robertson*, 520 U.S. 83, 92 n. 5 (1997) ("[C]ounsel are obliged to this Court (not to mention their clients) to raise [] threshold issues in their briefs in opposition [to certiorari petitions]."); *Knowles v. Iowa*, 525 U.S. 113, 116 (1998) ("even if [petitioner's] failure to seek certiorari review of this decision could preclude his present challenge, Iowa waived this argument by failing to raise it in its brief in opposition to the petition for certiorari."); *Oklahoma City v. Tuttle,* 471 U.S. 808, 816 (1985) ("Nonjurisdictional defects of this sort should be brought to our attention *no later* than in respondent's brief in opposition to the petition for certiorari; if not, we consider it within our discretion to deem the defect waived"); *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 107 (2015) (even if government did not waive an argument below, "it has done so in [the Supreme] Court" when the response to the cert. petition did not raise the claim).

By failing to tell the Supreme Court that the government would take the position that Binday deserved no relief, regardless of the outcome in *Ciminelli*, the government misled the Supreme Court. *See Roper v. Weaver*, 550 U.S. 598, 607 (2007) (Scalia, J. dissenting) (failure of respondent to comply with Rule 15.2 constituted "sandbagging"); *S. Cent. Bell Tel. Co. v. Alabama*, 526 U.S. 160, 171 (1999) ("the State did not make clear it intended to make this argument until it filed its brief on the merits. We would normally expect notice of an intent to make so far-reaching an argument in the respondent's opposition to a petition for certiorari, cf. this Court's Rule 15.2 …."); *Brumfield v. Cain*, 576 U.S. 305, 322 (2015) (where state's brief in opposition to certiorari did not contain an argument

later raised in merits briefing, the argument was deemed waived); *Carcieri v. Salazar*, 555 U.S. 379, 396 (2009) (where government brief in opposition to certiorari did not contest petitioner's assertion, a later contrary claim was deemed waived).

The government's claim that the Supreme Court GVR order preserved the government's procedural claim by not mentioning it misstates who has the power to waive arguments:  The issue is not what the Supreme Court wrote in the GVR order, but whether the Solicitor General's own brief, eschewing any procedural defense to Binday's petition, constituted a waiver of any such arguments.  "A waived claim or defense is one that a party has knowingly and intelligently relinquished."  *Wood v. Milyard*, 566 U.S. 463, 470 n.4 (2012).  The government knew it had procedural defenses when it responded to Binday's petition.  If it chose not to raise them for strategic reasons, that is improper.  *See Granberry v. Greer*, 481 U.S. 129, 132 (1987) (the government may not "withhold raising a defense until after the 'main event'—in this case, the proceeding in the District Court—is over").

Contrary to the government's assertion, Opp. at 18, the Supreme Court regularly considers procedural objections in response to cert petitions; it is not too busy.  *E.g.*, *Dretke v. Haley*, 541 U.S. 386, 392 (2004) (ruling on procedural default doctrine).

Finally, the decision in *United States v. Ardley*, 242 F.3d 989, 990 (11th Cir. 2001), which reaffirmed the Eleventh Circuit's "rule that issues and contentions not timely raised in the briefs are deemed abandoned," does not help the government.  The two opinions denying the en banc petition in that case debated whether Ardley, who failed to raise the legal argument on direct appeal later validated by a retroactive Supreme Court decision (*Apprendi*), could nevertheless

raise the *Apprendi* argument after the Supreme Court GVR'd Ardley's case. The Eleventh Circuit ruled that he could not.

The government and Ardley are alike: they both failed to raise an argument and thus waived it. Unlike Ardley, Binday raised his challenge in the district court and this Court multiple times. He abandoned nothing. The government did not cite to a later Eleventh Circuit decision in *United States v. Shelton*, 400 F.3d 1325, 1330 n.5 (11th Cir. 2005), where the court held that a defendant did not waive a later *Apprendi* claim because he raised the argument on direct appeal.

Finally, in *Ardley*, the government opposed certiorari. Here, however, when the Supreme Court *asked* the government to file a response to Binday's petition, it *conceded* that *Ciminelli* "may"[1] be decisive on Binday's challenge to RTC. That forfeited any other argument.

## C. THE LIMITS ON THIS COURT'S REVIEW

In his motion, Binday argued that remand to this Court "is limited to the effect of *Ciminelli* on Binday's conviction." Br. at 22, 24. The government did not respond to this point and thus concedes it. "The government's silence on these issues operates as a forfeiture." *Wani Site v. Holder*, 656 F.3d 590, 593 (7th Cir. 2011).

In any event, the limitation on remand is well-established. "Any reconsideration at this juncture of our earlier opinion must be limited to the scope

---

[1]  The government quibbles over whether it told the Supreme Court that *Ciminelli* "may" or "would" affect Binday's conviction. The Supreme Court GVR's a case when it has "reason to believe the court below did not fully consider" intervening developments that create "a reasonable probability that the decision below rests upon a premise that the lower court **would** reject if given the opportunity for further consideration." *Lawrence v. Chater*, 516 U.S. 163, 167 (1996) (emphasis added).

of the Supreme Court's remand…. Therefore, we will not reconsider issues that are not directly implicated by the Supreme Court's decision in *Taylor.*" *Escalera v. Coombe*, 852 F.2d 45, 47 (2d Cir. 1988). "The general rule is that, when the Supreme Court remands in a civil case, the court of appeals should confine its ensuing inquiry to matters coming within the specified scope of the remand." *Kotler v. Am. Tobacco Co.*, 981 F.2d 7, 13 (1st Cir. 1992) (citing *Escalera*). "When a case is appealed from this Court to the Supreme Court, this Court completely loses jurisdiction of the cause. Thereafter, our jurisdiction can be revived only upon the mandate of the Supreme Court itself, and even upon such restoration, the jurisdiction of this Court is rigidly limited to those points, and those points only, specifically consigned to our consideration by the Supreme Court." *Hermann v. Brownell*, 274 F.2d 842, 843 (9th Cir. 1960).

The concurring opinion in *Ardley* makes the same point: "There is no implication in the standard language of those [GVR] orders that the court of appeals is to do anything except reconsider the case now that there is a new Supreme Court decision that may, or may not, affect the result." *Ardley*, 273 F.3d at 994.

## IV. BINDAY'S PROPOSED MOTION IS NOT A SECOND OR SUCCESSIVE 2255 MOTION

Binday explained that "second or successive" had an accepted meaning before the adoption of AEDPA; Congress adopted that phrase in AEDPA; the phrase has the same meaning that it always had (with one limitation that substituted 2255(h) for the "ends of justice" inquiry identified in *Sanders v. United States*, 373 U.S. 1, 15 (1963)); that phrase must be read narrowly to avoid limiting the courts' jurisdiction over 2255 motions; and the Court set out the criteria to judge whether a second in time motion is "second or successive" in *Banister v. Davis*, 140 S. Ct. 1698 (2020). Br. at 24-25.

Binday also demonstrated that courts distinguish petitioners who did not raise a claim on direct appeal or in a first 2255 motion from those who have. That was the point of discussing the Eighth Circuit's opinion in *Jones*. Br. at 29-30. Petitioners who did not raise arguments on direct appeal may lose their ability to raise that claim in a second in time petition. Since that is true, then so is the obverse: petitioners who raise arguments on direct appeal do not lose that ability because the court's initial error deprived the petitioner of his right to a "full and fair" hearing. *See Magwood v. Patterson*, 561 U.S. 320, 345 (2010) (dissent).

The same distinction between those who raise issues on appeal and those who do not underlies the cause and prejudice test. *See Bousley v. United States*, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised" by showing cause and prejudice); *Massaro v. United States*, 538 U.S. 500, 504 (2003) ("claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice").

The obverse—that claims raised on direct appeal may be raised on collateral review—necessarily follows. There would be no point in creating a gateway to relief for people who *fail* to raise issues if the Court were not simultaneously recognizing that people who raised the issue on direct appeal preserved it, regardless of an intervening 2255 motion. Indeed, in *Massaro*, the Supreme Court held that failure to raise an ineffective assistance of counsel ("IAC") claim on direct appeal did *not* bar a defendant from raising that claim in a 2255 motion. This Court historically required an IAC claim to be raised on direct appeal (*Billy-Eko v. United States*, 8 F.3d 111 (2d Cir. 1993), but the Supreme Court abrogated *Billy-Eko* in *Massaro.* If Binday's appellate counsel had followed *Billy-Eko*, then the government would have no reason to complain now. The slight procedural difference between raising an IAC claim on direct appeal or in a 2255 motion is

mostly one of timing, yet the government tries to exploit the difference to deny Binday relief and thus exalts form over substance.

Each of the government's arguments regarding the meaning or scope of "second or successive" is meritless.

1.     The government claims *Jones*'s rejection of this Court's reading of section 2255(e) dictates against Binday's motion.  Opp. at 22. The Supreme Court's decision in *Jones* is inapposite. Binday is not asking for authorization to file a 2241 motion; there is no 2241 authorization requirement, and he has not abandoned any 2241 claim, as the government suggests.  The Supreme Court did not remand to this Court with a direction to consider Binday's case in light of *Jones*.

Moreover, the government ignores the historical development of the phrase "second or successive" and the continued use by the Supreme Court of the law that defined the phrase.  It treats the language added by AEDPA as though it were newly minted, without definition, by Congress. That is untrue.

2.     The government overstates the decision in *Vu v. United States*, 648 F.3d 111, 113-14 (2d Cir. 2011). Opp. at 23. In *Vu*, this Court held that a first 2255 motion claiming appellate counsel was ineffective did not count against Vu's "second or successive" hurdle because Vu's first 2255 motion reinstated his appeal right and did not challenge his conviction.  This Court said that a claim is "generally … successive" when it "attack[s] the same judgment that was attacked in the prior motion."  *Id*. at 113 (cleaned up).

"Generally" does not mean "always" or "only."  It means "in a general manner: as a: in disregard of specific instances and with regard to an overall picture <generally speaking> b: as a rule : USUALLY." *Merriam Webster On Line Dictionary*, http://www.merriam-webster.com/dictionary/generally. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 757 (2004) ("Generally, albeit not always, the

place where the negligent or intentional act or omission takes place coincides with the place of injury."); *United States v. McDowell*, 745 F.3d 115, 121 (4th Cir. 2014) (the NCIC database is generally (albeit not always) accurate"); *Johnson v. Manhattan Ry. Co.*, 61 F.2d 934 (2d Cir. 1932) (L. Hand) ("All valid rules of law are imperative; their violation is generally, though not always, a wrong for which in some form or other relief is usually open . . . .").

In any event, *Vu* did not consider *Davis v. United States*, 417 U.S. 333, 336 (1974) (discussed below), which authorized a second in time 2255 motion when a defendant raised the issue on direct appeal. Nor was there a reason for *Vu* to consider FRCP Rule 60, which defendants may use to challenge orders denying a prior 2255 motion when judges err. *Kemp v. United States*, 142 S. Ct. 1856, 1861 (2022). *See Cobb v. United States*, 2019 WL 2607002 (E.D.N.Y. 2019) (modifying order denying 2255 motion entered 13 years earlier because of judicial error).

Binday may challenge this Court's judgment affirming his conviction and the judgments relating to his first 2255 motion. *See, e.g.*, FRCrP 32(k) (conviction); FRAP 36 (appeal); 28 USC §2255(d) and FRCP 54 (habeas).

Thus, *Vu* is not an impediment to Binday.

3.       The government next argues that this Court rejected Binday's 2255 motion under *Kelly* in its 2021 Order as second or successive and should do so again here. Opp. at 24. The 2021 Order was vacated; relying on it is improper. Vacate means "[t]o nullify or cancel; make void; invalidate <the court vacated the judgment>." VACATE, Black's Law Dictionary (11th ed. 2019). The Supreme Court remanded for consideration of *Ciminelli*, not *Kelly*.

4.       Contrary to the government's claim (Opp. at 25), Binday has not asked this Court to "relax" the second or successive language to cover situations barred by *Jones*. In *Jones*, the Court did not define "second or successive"; it

construed the meaning of "inadequate and ineffective" in section 2255(e) and abrogated this Court's construction in *Triestman v. United States*, 124 F.3d 361, 377 (2d Cir. 1997). It assumed Jones's petition was "second or successive" because Jones never raised the *Rehaif* argument before his 2241 motion. "Congress enumerated two—and only two—conditions in which **a second or successive** § 2255 motion may proceed." *Jones v. Hendrix*, 599 U.S. 465, 477 (2023) (emphasis added). The Court referred to the "second or successive" phrase twenty times. It thus understood that its holding would be confined to true "second or successive" motions.

The government has nothing to say about *Davis, supra,* 417 U.S. 333, where the Court held that a person like Binday could file a second in time 2255 motion when he had raised the issue on direct appeal and the Supreme Court later validated that argument. *Jones* recognized that *Davis* was an "innovation" in habeas law and reaffirmed that *Davis* authorized a collateral attack on convictions after the Supreme Court narrowed the interpretation of criminal laws. *Jones*, 599 U.S. at 487. *Jones* said that *Davis* expanded the historic limits of habeas by recognizing that "a substantive error of statutory law could be a cognizable ground for a collateral attack on a federal court's criminal judgment." *Id*. *See Cook v. United States*, 84 F.4th 118, 125 n.4 (2d Cir. 2023) (a collateral attack waiver may be unenforceable in the event of a "complete miscarriage of justice," citing *Davis*).

In *Davis*, the defendant appealed his conviction to the Ninth Circuit. While his appeal was pending, the Supreme Court decided a case that raised doubt about the conviction, and the Ninth Circuit remanded. The district court reaffirmed Davis's conviction, and the Ninth Circuit affirmed. When the Ninth Circuit later reversed a different defendant's conviction based on the same law, Davis filed a 2255 motion. It was denied and the Ninth Circuit affirmed, but the Supreme Court reversed, drawing a distinction between defendants who raise a challenge on direct

appeal that is later vindicated by the Supreme Court and those who do not, reaffirming the holding in *Sanders*[2] that a second in time 2255 is not barred if the defendant raised the challenge on direct appeal or in an earlier 2255 motion. *Davis*, 417 U.S. at 342.

The Court noted that defendants who do raise the challenge stand in contrast to those who do not. When defendants "pursued the appellate course and failed, their cases would be quite different. But since they chose not to pursue the remedy which they had, we do not think they should now be allowed to justify their failure by saying they deemed any appeal futile." *Id*. at 345 (cleaned up).

In one court of appeals decision that *Jones* listed as construing section 2255(e) correctly, *Prost v. Anderson*, 636 F.3d 578 (10th Cir. 2011), the defendant pled guilty to money laundering, filed a 2255 motion challenging his sentence, and then ten years later filed a 2241 motion to vacate his conviction when the Supreme Court narrowed the scope of Prost's statute of conviction. Justice (then Judge) Gorsuch held that Prost could not use section 2241 to avoid the restrictions of section 2255(e), but he also held that "Prost never pursued a statutory interpretation argument in his own trial court proceedings, on appeal, or in his initial collateral challenge to his conviction." *Id*. at 579.

Justice Gorsuch identified a constitutional path for a petitioner to seek relief under section 2241 when denying someone the chance to file a "second or successive" petition would "seriously threaten to render the § 2255 remedial

---

[2]     In his opening brief at footnote 7, Binday inadvertently misquoted *Sanders* by adding in the word "not." The note should read: "*Sanders* also held that a district court had discretion to nevertheless consider the petition if the "ends of justice would be served by reaching the merits of the subsequent application." 373 U.S. at 15. That part of the definition was eliminated by AEDPA. *Banister*, 140 S. Ct. at 1707."

process unconstitutional." *Id*. at 593 (citing *Triestman*). "[I]f and when the narrowness of [§ 2255](h) poses a difficulty of constitutional dimension, the Second and Third Circuits say, a court may step in to permit the petition to proceed. In support of their view, the Second and Third Circuits rest on the traditional canon of statutory construction that courts should seek to interpret Congress's statutory handiwork in light of and consistent with the Constitution's commands." *Id. at* 593. Justice Gorsuch identified that as an "important question" that Prost had not raised and so the court had no reason to address. *Jones* did not reject that part of *Triestman* or *Prost*.

Denying Binday the ability to proceed would undermine every court decision telling petitioners that they should have raised their new claims on direct appeal. It would validate the government's practice whereby it "stakes out a maximalist position, only later to concede limits when the statute upon which it relies might be struck down entirely and the Government finds itself on its back foot." *United States v. Hansen*, 599 U.S. 762, 810 (2023) (Jackson, J. dissenting) (citing *Ciminelli*).

If, in response to Binday's first 2255 motion, the government conceded that RTC was defective—as it did in *Ciminelli*—then the district court would have granted Binday's 2255 motion. Binday should have the chance to make that argument now that the government has seen the light.

5.      Next the government contends that three Supreme Court decisions that discuss how to determine whether a petition is second or successive "are nothing like this one," citing to short descriptions of those cases. Opp. at 25. The government does not, however, address the reason Binday discussed those cases: they represent the standard the Supreme Court established for determining whether a petition is second or successive. The government does not dispute that standard; it only claims the same issue arose in different circumstances.

6.   Without mentioning that *Banister* set out the standard for determining the status of a second in time 2255 motion, the government claims that AEDPA was supposed to make it "more difficult" for a second petition.  Opp. at 27.  But it does not adequately address whether its reading of the statute would damage habeas practice.  It would.

The government's reading would mean that, after the Supreme Court denied Binday's certiorari petition from his direct appeal, Binday should have forfeited his challenge to his trial lawyer's misapprehension of RTC fraud in the hope that someday the Supreme Court would revisit and vindicate his position.  Congress could not have meant to force defendants to choose between their Sixth Amendment right to effective counsel and a potential legal claim at an unidentified date in the future.  "The right to the effective assistance of counsel at trial is a bedrock principle in our justice system." *Martinez v. Ryan*, 566 U.S. 1, 12 (2012).  Lawyers should not be "encouraged to say nothing at all" about the performance of a defendant's trial counsel to preserve a hoped-for future beneficial Supreme Court decision.  *See Padilla v. Kentucky*, 559 U.S. 356, 370 (2010).

The government's view would alter habeas practice by forcing trial or appellate lawyers to file IAC claims on direct appeal (contrary to standard practice and perhaps prematurely), delaying appeals for IAC discovery and hearings, raising conflicts among lawyers and their clients, and increasing the judicial burden on direct appeals.  Alternatively, people like Binday would sit on their hands for years, forgoing valid IAC claims, until someone else made the same argument they made on direct appeal.  Then, many years after the appeal, their argument would be ripe for a 2255 motion. That scenario does not advance the efficient evaluation of constitutional claims.

7.   The government claims its interest in finality counsels against authorizing Binday's motion, asserting that Binday did not argue he is factually

innocent.  Opp. at 27-28.  Binday has contended that he is innocent from the beginning: he was convicted for breaching a contract.  Contract breachers are not criminals.  At the behest of the government, this Court "employed the theory to affirm federal convictions regulating the ethics (or lack thereof) of state employees and contractors—despite our admonition that '[f]ederal prosecutors may not use property fraud statutes to set standards of disclosure and good government for state and local officials.'" *Ciminelli*, 598 U.S. at 316 (quoting *Kelly*).

Someone convicted for conduct that is not a crime is factually innocent. The government should not be allowed to use a rule intended to cut back on habeas *abuses* to deny Binday relief.  "[D]ry formalism should not sterilize procedural resources which Congress has made available to the federal courts," *Stutson v. United States*, 516 U.S. 193, 196 (1996), especially when the government did not raise them when it mattered in the Supreme Court.

8.     The government complains (Opp. at 28) that Binday cited to the Eighth Circuit opinion in *Jones* to show how the lower court's judgment, approved by the Supreme Court, distinguished between petitioners who previously raised a legal issue (and lost) and those who did not. It does not have a good explanation of why the Eighth Circuit made that factual distinction and instead argues that the court of appeals was only concerned with the savings clause of section 2255(e) and not 2255(h).

But that proves Binday's point:  the savings clause could not save Jones *because* he had not raised the issue on direct appeal, according to the Eighth Circuit.

The government also claims this Court's decision in *Cephas* has been abrogated by *Jones*, but again misses Binday's point:  Binday did not argue that *Jones* approved this Court's use of the savings clause; he cited to *Cephas* because this Court drew a distinction (for 2255 and 2241 purposes) between people who

did or did not raise the later-vindicated contention on direct appeal. The government has no good rebuttal to that distinction because there is none: the distinction underlies the definition of second or successive.

9. Finally, the government claims that the Supreme Court does not "adjudicate procedural defenses when it issues GVR orders." Opp. at 29. It did not adjudicate the procedural defense here *because the government chose not to raise it*. The Court does consider procedural defenses if it is presented with the issues. *Jones* itself was a decision on procedural objections to a 2241 petition raised by the government. *See Cone v. Bell*, 556 U.S. 449, 469 (2009) ("The State's procedural objections to federal review of the merits of Cone's claim have resulted in a significant delay …. [T]hey provide no obstacle to judicial review.").

## V. CIMINELLI IS A RETROACTIVE CONSTITUTIONAL DECISION

In his motion, Binday argued that he met the "lenient" prima facie standard of section 2255(h)/2244(b) because the Supreme Court in *Ciminelli* cited multiple constitutional principles to reject RTC. Br. at 35 et seq.

First, the government claims Binday's question presented to the Supreme Court asked the Court to interpret the statute. Not so. Binday's question asked the Supreme Court to *invalidate* the RTC theory of fraud; he did not ask for an interpretation. The Supreme Court began its opinion with Binday's question: "whether the Second Circuit's longstanding 'right to control' theory of fraud describes a ***valid basis for liability***." *Ciminelli*, 598 U.S. at 308 (emphasis added). It rejected RTC as an invalid constructive crime.

Second, the government claims that the Court applied canons of statutory construction. That is wrong. Traditional canons of statutory construction include (1) how a statute may be plausibly read, (2) the inclusion of all the words of a statute so that none are superfluous, (3) Congress' use of particular language is

presumed intentional, (4) whether a particular reading "fits neatly with a reading of the statute as a whole," (5) whether a particular term controls a general term; and (6) Congressional intent, if the language as construed is ambiguous. *United States v. Peterson*, 394 F.3d 98, 107 (2d Cir. 2005). It typically involves choosing one of two competing readings of the words. *Dubin v. United States*, 599 U.S. 110, 117 (2023) ("The parties offer competing readings of these two elements."). When the Court is interpreting a statute it refers to the "ordinary meaning" of the language; dictionary definitions; "interpretive guides" such as statutory titles; where the statute is codified; the legislative history; whether the government's reading would render other language "superfluous"; neighboring words; and *ejusdem generis* (general words construed similarly to specific words). *Yates v. United States*, 574 U.S. 528, 537-46 (2015).

These interpretative tools do not appear in *Ciminelli*. The Court referred to the rule of lenity in its decision when it compared *Ciminelli* to *McNally*, where it rejected honest services fraud as a constructive offense. Thus, the Court did not "narrow" the statute; it invalidated RTC fraud. Put another way, courts sometimes "narrow" the meaning of the words of a statute, such as in *McDonnell* or *Dubin*; and other times they "narrow" the class of people who may be prosecuted under criminal laws. In those latter cases, the Court is not trying to define a term but rather ensuring that the government only prosecutes conduct the statute covers and not conduct prosecutors or judges don't like. When prosecutors and courts expand that coverage, untethered to the Congressional enactment, they are creating new laws, and that is an unconstitutional exercise of power. That is why the Supreme Court has said, in some fraud cases, that Congress must speak more clearly if it intended conduct to be covered by criminal laws. *McNally*, *Cleveland*, *Skilling*, *Kelly,* and *Ciminelli* limited the universe of people whose conduct was criminal to that specified by the law.

The Supreme Court referred to the historical meaning of the word property because labeling RTC as property went "beyond the meaning that justly may be attributed to the language used." *Fasulo v. United States*, 272 U.S. 620, 629 (1926). Thus, RTC fraud is a judicial expansion of "federal jurisdiction without statutory authorization." *Ciminelli*, 143 S.Ct. at 1128. In *McNally*, the Court relied on *Fasulo* to hold that "property" in the fraud statutes never embraced the intangible right of honest services, and the lower courts' expansion left the statute unconstitutionally ambiguous and supplanted Congress' power to set standards of disclosure. *McNally v. United States*, 483 U.S. 350, 360 (1987).

*Fasulo*, *McNally*, *Ciminelli*, and the others rejected judicially constructed statutes to "correct" lower courts' "erroneous view" of the statute's coverage and not because of a disagreement over the application of the canons of statutory construction. *See Ingber v. Enzor*, 841 F.2d 450, 453 (2d Cir. 1988). That is why this Court held that *McNally* was a new rule of substantive law and retroactive: the conviction was void ab initio. *Id*. 454 and n.1.

Third, the government compares *Ciminelli* to two of this Court's opinions ruling that the Supreme Court's decisions in *Rehaif* and *Mathis* were not constitutional retroactive decisions. But those two Supreme Court cases concerned the meaning of language in the Armed Career Criminal Act. In his motion, Binday pointed to the Court's decision in *Welch*, which decided that *Johnson v. United States,* 576 U.S. 591 (2015) (invalidating the residual clause of ACCA) was retroactive because it "changed the substantive reach of the Armed Career Criminal Act [by] altering 'the range of conduct or the class of persons that the [Act] punishes.'" *Welch v. United States*, 578 U.S. 120, 129 (2016).

*Johnson* and *Ciminelli* are two sides of the same coin: in *Johnson*, the Congressional language was too vague to comply with due process, and in *Ciminelli* the judicially created RTC theory went "beyond property fraud as

defined at common law and as Congress would have understood it." *Ciminelli*, 143 S.Ct. at 1128. Despite its concession in *Welch* that decisions rejecting the expanded scope of criminal laws are grounded in constitutional law, it takes the opposite position here—without attempting to distinguish *Welch*.

Fourth, the government claims Judge Krause's concurring opinion in *Porat* did not say *Ciminelli* is constitutional and retroactive. Opp. at 34-35. The government has blinders on: Judge Krause repeatedly referred to "due process" and "federalism" concerns. She said courts should have stopped prosecutors from using their "novel theories" to police their own "standards of disclosure." She pointed to the constitutional limits of "notice, federalism, and self-governance" as the reason why the Supreme Court rejected RTC. *See United States v. Porat*, 76 F.4th 213, 224-25 (3d Cir. 2023).

Fifth, the government claims *Jones* rejected Binday's argument that *Ciminelli* is a constitutional decision when the Court quoted the two categories of permissible second or successive 2255 motions, claiming opinions that "draw on constitutional principles" are not constitutional decisions. Opp. at 36. That is not what *Welch* and many other cases held, and the government does not cite to a "constitutional principle" case that is not a constitutional decision.

Sixth, Binday explained in his motion how each of the prior cases that *Ciminelli* relied on were constitutional and retroactive. Br. at 38 et seq. The government just argues by contradiction that they were not constitutional, including an improper cite to this Court's vacated 2021 Order. Opp. at 37. It does not discuss any of the cases that applied those earlier decisions retroactively and ignores this Court's opinion in *Ingber*.

## VI.    THIS COURT MAY RECALL THE MANDATE FROM BINDAY'S DIRECT APPEAL

The Supreme Court's judgment granted Binday's petition and ordered that this Court's "judgment … in this cause is vacated with costs, and the case is remanded to the United States Court of Appeals for the Second Circuit for further consideration in light of *Ciminelli v. United States*, 598 U. S. ___ (2023)."

The straightforward way to consider Binday's case in light of *Ciminelli* is for this Court to reconsider Binday's appeal.  That is essentially what the government agreed to after *Cleveland* abrogated *United States v. Salvatore*, 110 F.3d 1131 (5th Cir. 1997): it agreed to vacate Salvatore's years' old conviction. *United States v. Salvatore*, No. CIV. A. 94-158, 2001 WL 263112, at *2 (E.D. La. Mar. 15, 2001), *aff'd,* 34 F. App'x 963 (5th Cir. 2002).

Here, the government opposes, but the three cases it cites are inapposite.  In *Bottone*, as Binday explained in his motion, this Court indicated it could recall the mandate if Bottone had made the new arguments on direct appeal.  Br. at 55. Neither *Fabian v. United States*, No. CIV.A.CV-04-1896DGT, 2007 WL 2480164, at *3 (E.D.N.Y. Aug. 28, 2007), nor *United States v. Redd*, 735 F.3d 88, 90 (2d Cir. 2013), concerned a defendant who had raised the same issue on direct appeal and before an intervening Supreme Court decision invalidated the basis of their convictions.

The government's last argument (Opp. at 39-40)—that Binday's commissions constituted the "money" for violation of the fraud statutes—is specious.  The jury was never instructed commissions could serve as "money."  It was instructed that it did not have to find a loss to the insurance companies' "bottom line," so it would be impossible for the jury to have found evidence of economic loss.  The government is "cherry picking" information from the trial to

prove a different wire fraud theory.  That is not this Court's role.  *Ciminelli*, 143 S.Ct. at 1128; Br. at 38.

## VII.   CONCLUSION

Michael Binday respectfully requests that his motion for authorization and/or to recall the mandate from the affirmance of his conviction be granted.

Dated: December 7, 2023

Respectfully Submitted,

_____
David W. Shapiro, NY Bar #2054054
The Norton Law Firm

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENT, AND TYPE STYLE REQUIREMENT

1. The undersigned counsel of record for Petitioner Michael Binday certifies pursuant to Federal Rules of Appellate Procedure 32 and Local Rule 32.1 that the foregoing brief contains 6,982 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), according to the Word Count feature of Microsoft Word for Mac.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac in 14-point font of Times New Roman.

Dated: December 7, 2023

/s/ *David W. Shapiro*
David W. Shapiro

EXHIBIT 1 TO BINDAY REPLY BRIEF

No. 21-1241

In The

# Supreme Court of the United States

◆

MICHAEL BINDAY,

*Petitioner,*

v.

UNITED STATES,

*Respondent.*

◆

**On Petition For A Writ Of Certiorari
To The United States Court Of Appeals
For The Second Circuit**

◆

**PETITIONER'S REPLY TO MEMORANDUM
FOR THE UNITED STATES**

◆

DAVID W. SHAPIRO
 *Counsel of Record*
GIL WALTON
THE NORTON LAW FIRM
299 Third Street
Suite 200
Oakland, CA 94607
(510) 906-4906
dshapiro@nortonlaw.com
gwalton@nortonlaw.com

COCKLE LEGAL BRIEFS (800) 225-6964
WWW.COCKLELEGALBRIEFS.COM

In its September 21, 2022 memorandum, the government concedes that Petitioner Michael Binday's petition for a writ of certiorari raises the same question presented as *Ciminelli v. United States*, No. 21-1170, and the disposition of *Ciminelli* may therefore affect the disposition of this petition and the judgment against Petitioner. Petitioner agrees with the government that the Court should hold his petition pending the Court's decision in *Ciminelli*. If the Court rules in favor of Ciminelli and determines that the Second Circuit's "right to control" theory of fraud *does not* state a valid basis for liability under the federal wire fraud statute, 18 U.S.C. § 1343, Petitioner respectfully requests that the Court grant his petition, vacate the judgment of the United States Court of Appeals for the Second Circuit and the judgment of conviction below, and remand to the district court to dismiss the indictment against Petitioner and/or for further proceedings consistent with the Court's opinion in *Ciminelli*.

That Petitioner now seeks relief under 28 U.S.C. § 2241, rather than through 28 U.S.C. § 2255 or on review after direct appeal, is irrelevant because Petitioner challenged the Second Circuit's "right to control" theory of property and asserted his actual innocence at trial, on appeal, in his petitions for certiorari to this Court, and in amicus briefs in *Kelly v. United States*, 140 S. Ct. 1565 (2020), and *Aldissi v. United States*, No. 19-5805. By doing so, Petitioner demonstrated why the safety valve of 28 U.S.C. § 2255(e) should provide him with an avenue for relief from an illegal conviction. If the Court resolves *Jones v. Hendrix*, No. 21-857 (oral

argument scheduled for Nov. 1, 2022), in a way that raises questions about the procedural posture of Petitioner's case or whether the Court should grant this petition, then Petitioner respectfully requests the opportunity to brief the application of the Court's opinions in *Ciminelli* and/or *Jones* to his petition.

Respectfully submitted,

DAVID W. SHAPIRO
   *Counsel of Record*
GIL WALTON
THE NORTON LAW FIRM
299 Third Street
Suite 200
Oakland, CA 94607
(510) 906-4906
dshapiro@nortonlaw.com
gwalton@nortonlaw.com