

David W. Shapiro
dshapiro@nortonlaw.com
510-906-4906

January 6, 2024

*By e-file*

Ms. Catherine O'Hagan Wolfe
Clerk of the Court
United States Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re: *Binday v. United States*, No. 21-1206

Dear Ms. Wolfe:

Petitioner submits this FRAP 28(j) letter to (1) advise this Court that on January 2, 2024 the government filed a brief in *United States v. Lopez* in this Court conceding that *Ciminelli* was a constitutionally based decision, and (2) provide a certified copy of the government's concession in *United States v. Salvatore*, No. 94-158 (M.D. La. 2001), that *Cleveland* was a constitutional retroactive decision. *See* Exhibit 1.

1. In his pending motion, Binday argues that *Ciminelli* rejected the right to control theory on federalism and constructive crime grounds, among others. The government disputes that point, but in *Lopez* it conceded that *Ciminelli* rejected the right to control theory as "a court-created intangible-rights theory of traditional wire fraud"— that is, a constructive crime—and *Ciminelli* held "the right to control theory 'place[d] under federal superintendence a vast array of conduct traditionally policed by the states"—that is, a violation of federalism. Brief For the United States, No. 23-7183, at 67-68 (2d Cir. Jan. 2, 2024).

2. Binday also argues that the Supreme Court's abrogation of *United States v. Binday,* 804 F.3d 558 (2d Cir. 2015), requires the Court to vacate Binday's conviction for the same reasons the district court vacated the convictions in *Salvatore* with the government's consent—a point the government does not concede here. Reply Brief of Petitioner, *Binday v. United States*, No. 21-1206, Doc. 142, at 28. When Binday filed his

Ms. Catherine O'Hagan Wolfe
Clerk of the Court
January 6, 2024
Page 2

reply brief, the government's brief in *Salvatore* (abrogated by *Cleveland*) was not available on Pacer; however, on January 2, 2024, Binday received a certified copy of the brief from the district court's archives.

In its *Salvatore* brief, the government conceded: "[s]even of Salvatore's mail fraud convictions and sentences … should be vacated based on the intervening Supreme Court decision in *Cleveland* …." Exhibit 1 at 1. It later conceded that the convictions of Salvatore's co-defendants (Victor and Anthony Tusa) "should be vacated" and "the indictments … dismissed." *United States v. Tusa*, No. CR. 94-158, 2001 WL 238213, at *1 (E.D. La. Mar. 6, 2001).

The government's concessions support Binday's argument that *Ciminelli* is a constitutional retroactive decision.

Very truly yours,

/s/ *David W. Shapiro*

David W. Shapiro
THE NORTON LAW FIRM PC

# EXHIBIT 1

```
                                        FILED
                                   U.S. DISTRICT COURT
                                   EASTERN DISTRICT OF LA

                                     2001 JAN 31 AM 11: 53

                                      LORETTA G. WHYTE
                                           CLERK
```

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL DOCKET NO: 94-158 |
| v. | * | SECTION: N |
| SEBASTIAN SALVATORE | * | |

\* \* \*

## GOVERNMENT'S RESPONSE TO DEFENDANT-PETITIONER SEBASTIAN SALVATORE'S PETITION FOR WRIT OF CORAM NOBIS

The United States of America, by and through the undersigned Assistant U.S. Attorney, agrees in part, and disagrees, in part, with Petitioner Salvatore's ("Salvatore") request for coram nobis relief. Seven of Salvatore's mail fraud convictions and sentences (i.e. Counts 3, 4, 5, 6, 7, 9, and 10) should be vacated based on the intervening Supreme Court decision in <u>Cleveland v. United States</u>, 121 S.Ct. 365 (2000). On the contrary, 16 distinct wire fraud counts upon which Salvatore was convicted (Counts 16 - 31), charging Salvatore with scheming to defraud Bally of monetary investments in the form of wired money advances, are not affected by Cleveland. Salvatore's additional contentions of "spillover" infirmity relating to his other counts of conviction also are mistaken factually and legally.

In addition to his convictions on the seven affected mail fraud counts, Salvatore was also found guilty of entirely separate federal criminal charges: a RICO count (Count 1), a RICO

conspiracy count (Count 2), two illegal gambling business counts (Count 8 and 11), an ITAR count (Count 37), and, as stated, 16 wire fraud counts charging **monetary** fraud against the non-governmental or regulatory victim Bally (Counts 16 - 31).

In Cleveland v. United States, No. 99-804, 2000 WL 1663649 (Nov. 7, 2000), the Supreme Court held that "the federal mail fraud statute, 18 U.S.C. §1341, [does not] reach[] false statements made in an application for a state license." Cleveland, supra, at *2.[1] Salvatore's 16 wire fraud charges (Counts 16 - 31) were, in fact, entirely distinct from, and based upon a distinct fraud scheme than, the seven mail fraud charges affected by Cleveland. These counts were, in fact, all grouped under the separate heading "Scheme to Defraud Bally (Counts 16 - 31)". That is, while the seven mail fraud charges were based upon a scheme to defraud the regulating State of Louisiana of its unissued video poker licenses, the 16 wire fraud charges were based upon a distinct scheme to defraud the unwitting financiers of the corrupt, mob-run video poker entities, that being Bally. Moreover, these were choate offenses, in which, as a result of the defendant's and others' concealment from Bally of their mob connections, Bally actually wired hundreds of thousands of

---

[1] The Court resolved a split which had emerged among the United States Courts of Appeals to clarify that Congress did not intend that deprivation of "property" under §1341 comprehend unissued licenses fraudulently obtained by applicants from governmental authorities. Id. at *3. This Court had upheld mail fraud prosecutions against persons whose schemes deprived states of the revenue-generating licenses. See United States v. Salvatore, 110 F.3d 1131 (5th Cir. 1997) (interstate organized crime hidden ownership of video poker licenses) ; United States v. Bankston, 182 F.3d 296 (5th Cir. 1999) (bribery of state senators relating to video poker licensing regime, as well as ownership interests concealed from state authorities).
In Cleveland, the Supreme Court held that license-issuing states received information from applicants in their capacity as regulators and that any sought after "license is not 'property' in the government regulator's hands." Id. at *4, 5 (emphasis added).

2

dollars in advances and loan payments to the mob-controlled companies. Such wirings constituting the individual monetary deprivation wire fraud counts.[2]

1. **Under Fifth Circuit and the Supreme Court caselaw there is no "spillover" from the 7 tainted mail fraud counts to other counts, including the 16 distinct counts charging wire fraud against Bally**

There is absolutely no interpretation of the Cleveland decision which undermines separate guilt determinations based on Salvatore's other counts of conviction, namely IGB, ITAR, RICO and RICO Conspiracy, and the 16 wire fraud offenses charging a scheme to deprive non-governmental entities (Bally) of actual money and tangible property. See United States v. Holzer, 840 F.2d 1343, 1349-1350 (7th Cir. 1988) (McNally tainted mail fraud counts do not require new trial on remaining extortion and RICO counts).[3] Cf. Griffin v. United States, 502 U.S. 46 (1991) (guilty verdict on count charging several acts in the conjunctive may stand if evidence is sufficient with respect to any one act); Neder v. United States, 527 U.S. 1, 18 (1999) (guilty verdict on count containing a legally invalid theory may stand if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.").

The spectrum of charges in this case, the government's proof, and the district court's instructions of law make clear that Salvatore's core criminal activity was his racketeering

---

[2] It bears noting that on page 35 of the indictment presented to the jury, the 16 wire fraud counts is clearly separated from the remaining counts under the caption "Scheme to Defraud Bally (Counts 16 - 31)"

[3] See also United States v. Saks, 964 F.2d 1514, 1521 (5th Cir. 1992) (in similar context of McNally narrowing of §1341, upholding even tainted fraud counts [in the instant case all vacated] because of harmlessness); United States v. Asher, 854 F.2d 1483, 1490-95 (3rd Cir. 1988) (same).

3

involvement with the New Orleans and New York City mafia enterprise, as well as his straightforward and related monetary fraud against Bally.[4] His case was not at all simply that of codefendant Victor and Anthony Tusa, who were the actual license applicants and thus in an analogous situation to the applicants in Cleveland.

This larger criminal involvement of Salvatore, found by the jury beyond a reasonable doubt to extend to four entirely distinct federal offenses, from the new invalid intangible license offense against the state, is evident even in his own filings relating to the video poker licenses. Not once at three separate pretrial, direct appeal, and certiorari stages did defendant Salvatore allege that "spillover" would require dismissal of <u>all</u> counts against him.[5]

Regardless, this Court adhered to the Fifth Circuit Pattern Jury Instructions and repeatedly instructed the jury to consider separately each count as to each defendant. In that context,[6] this Court has emphasized that such instructions are "held 'sufficient to cure any possibility of prejudice.'" United States v. Manges, 110 F.3d 1162 (5th Cir. 1997); United States v. Walters, 87 F.3d 663 (5th

---

[4] The indisputable fact of Salvatore's monetary fraud against Bally is evidenced by his sentence, which included an order by this Court that he pay $25,000 amount in restitution to the victim Bally Corporations.

[5] In fact, his own petition recognizes that on each occasion he alleged "license" error relating to only "certain" counts.

[6] And above all where, as here, there was no Salvatore argument of misjoinder pursuant to Fed. R. Crim. P. 8, nor any request for relief based on perceived prejudicial joinder, pursuant to Fed. R. Crim. P. 14.

4

Cir. 1996).[7]

Moreover, Salvatore's RICO and RICO conspiracy jury guilt findings were returned based on a special verdict form (attached) which tracked exactly which predicate acts were "proven," and which were "not proven." That special verdict form, entitled "Supplemental Verdict Form," indicated that the convicting jury found that Salvatore had indeed committed two racketeering acts in the form of all five charged sub-predicate acts. Importantly, Racketeering Act #1 stands because the jury found that Salvatore had committed not only sub-predicate Act #1B, (consisting of Cleveland-dismissible mail fraud count #5), but also Act #1A (consisting of a distinct IGB count). Similarly, the jury determined that Salvatore had committed Racketeering Act #2 through not only Cleveland-dismissible sub-predicate Acts #2B and #2C (consisting of infirm mail fraud counts 9 and 10), but also that Salvatore committed Act #2A (consisting of distinct IGB Count 11). Consequently, under settled law from the Fifth Circuit, and every other Circuit in the country, because there are sufficient non-mail fraud predicates the RICO and RICO conspiracy verdicts are unaffected by any conceivable taint arising from partial license-as-property mail fraud counts. See generally United States v. Brown, 161 F.3d 256, 259 & n. 7 (5th Cir. 1998) (en banc) (referring to and quoting Carella v. California, 491 U.S. 263, 271 (1989) (Scalia, concurring)); see also United

---

[7]Also, Salvatore's suggestion of improper proof against him under the Federal Rules of Evidence is inconsistent with the Cleveland decision itself. In Cleveland, the Supreme Court itself emphasized that the false statements to obtain state gambling licenses, though not within the ambit of 18 U.S.C. §1341, clearly were still state crimes and misconduct. As such, admission of this conduct would not be error under the Federal Rules of Evidence. Fed. R. Evid. R. 404(b); see also United States v. Lane, 474 U.S. 438, 450 (1986) (admissibility of acts in furtherance of criminality).

5

States v. Neder, 527 U.S. 1 (1999).

As noted above, in Neder, the Supreme Court held that an appellate court may affirm a conviction even where the case was submitted to the jury on a legally invalid theory. The Court held that the verdict is sustained in such a case if it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." Id. at 18 (emphasis added).[8]

And separate from this Court's controlling law set forth in Brown and Wilson, there is additional Fifth Circuit precedent that makes clear that RICO and RICO conspiracy counts will not be overturned when they rest on special verdict responses that cabin and demonstrate to be harmless any conceivable predicate act error. See, e.g., United States v. Pepe, 747 F.2d 632, 667-668 (11th Cir. 1984) (citing also United States v. Peacock, 654 F.2d 339, 348 (5th Cir. 1981), vacated in part on other grounds, 686 F.2d 356 (5th Cir. 1982)); United States v. Cardall, 885 F.2d 656, 682-683 (10th Cir. 1989); United States v. Corona, 885 F.2d 766, 774-775 (11th Cir. 1989); United States v. Anderson, 809 F.2d 1281, 1284 (7th Cir. 1987); United States v. Coon, 187 F.3d 888, 896 (8th Cir. 1999). In Peacock, supra, this Court held that as long as the jury convicted the defendants on at least two racketeering acts that were related to the criminal enterprise, the RICO convictions would stand. 654 F.2d at 348; see also Weber, Reversal of a RICO Predicate offense on Appeal: Should the RICO Count be Vacated?, 27 San. Diego L. Rev. 183, 191-195 (1990) (explaining that Peacock is majority view and that in cases in which predicate acts also are substantively charged and proven offenses,

---

[8] The Fifth Circuit, in fact, anticipated the Neder harmlessness holding. See United States v. Brown, 161 F.3d 256, 259 & n. 7 (5th Cir. 1998) (en banc); see also United States v. Wilson, 116 F.3d 1066, 1079 (5th Cir. 1997).

courts are not left to speculate as to grounds for RICO convictions); Brennan v. United States, 867 F.2d 111, 115 (2nd Cir. 1989).

Salvatore attempts to synthesize a negative domino effect on the remaining RICO, RICO conspiracy, IGB, ITAR, and 16 tangible property wire fraud counts through reference to Pinkerton. This fails for at least three reasons.

First, he is turning the Court's Pinkerton instruction on its head. The instruction tells a jury it can find substantive offense guilt based on joint enterprise activity. It does not allow a jury to infer from substantive offense guilt, like mail fraud, to construct a conspiracy that then somehow invalidates other substantive offense convictions. Notably, Salvatore cites no pertinent supporting caselaw. The one he does is United States v. Marcello, 876 F.2d 1147 (5th Cir. 1989) which is distinguishable, because, inter alia, there was no special verdict in that case. Also, Marcello contains no discussion of Pinkerton.

Unlike Marcello, this Court carefully, commendably employed a special verdict relating to the joint venture RICO offense. The jury convicted Salvatore, of one ITAR count, two IGB counts, and 16 tangible property wire fraud counts against Bally. The jury reiterated the guilt as sufficient support for the RICO convictions (as previously stated), by specifically finding the existence of two non-mail fraud IGB sub-predicates, satisfying the RICO pattern requirement. Excising any tainted mail fraud predicates is straightforward and longstanding law makes clear it leaves intact RICO and RICO conspiracy and other substantive counts. Griffin v. United States, 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991) (requiring affirmance where evidence is sufficient on one of two alternative

bases for conviction); see also, supra.

Salvatore's entire logic is wrong, inasmuch as Pinkerton, while establishing a co-conspirator liability for substantive offenses, still requires that the other offenses actually be committed.

On the contrary, any Pinkerton liability for the substantive mail fraud counts charging a scheme to defraud Bally of money and property is wholly legitimate because a separate scheme to defraud a non-governmental entity out of actual money and property remains unaffected by Cleveland. We submit, then, that Salvatore's convictions on the two IGB counts, as well as the remaining ITAR and 16 substantive wire fraud counts against Bally, are unaffected and are therefore properly substantive counts upon which any defendant can and should face exposure under Pinkerton.

In light of the above arguments, and the government's contention that Salvatore is entitled to no relief except reimbursement of a special assessment sum of $350, the government would also note that he has failed to demonstrate a miscarriage of justice sufficient to warrant relief under 28 U.S.C. §1651. Salvatore also makes only a one sentence, cursory contention describing alleged, ongoing civil disabilities.[9] That clearly is insufficient to trigger extraordinary coram nobis relief. See United States v. Dyer, 136 F.3d 417, 422 (5th Cir. 1998); see also United States v. Bush, 888 F.2d 1145 (7th Cir. 1989) (comprehensive discussion of Circuit and Supreme Court law relating to

---

[9] He complains that he cannot vote, possess a firearm, and must pay restitution. These "disabilities" all remain, however, based on his multiple other substantive offenses, regardless of any Cleveland invalidation of mail fraud counts. His worry about possible future criminal punishments is entirely speculative and is a concern he alone can obviate through law-abiding behavior.

8

availability of coram nobis relief); United States v. Mills, 221 F.3d 1201 (11th Cir. 2000); Carlisle v. United States, 517 U.S. 416, 417 (1996). The government respectfully suggests that the Court rest a rejection of Salvatore's request for sweeping coram nobis relief on all counts on this separate deficiency as well.

## CONCLUSION

For the foregoing reasons, the government respectfully asks that the Court vacate Salvatore's convictions and sentences on Counts 3, 4, 5, 6, 7, 9 and 10 based on the Cleveland decision, but deny coram nobis relief as to any other count and sentence. Only Salvatore's special assessment would be adjusted.

Respectfully submitted,

EDDIE J. JORDAN, JR.
UNITED STATES ATTORNEY

_____
JIM LETTEN (8517)
First Assistant United States Attorney

STEPHEN A. HIGGINSON
Assistant United States Attorney
501 Magazine Street, 2nd Floor
New Orleans, Louisiana 70130
Telephone: (504)680-3078

CERTIFICATE OF SERVICE
I certify that a copy of the foregoing
has been served upon all counsel of record,
by U.S. mails to each, this
31st day of January, 2001.

_____
ASSISTANT U.S. ATTORNEY

9

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA * CRIMINAL ACTION

VERSUS * NO. 94-158

SEBASTIAN SALVATORE, ET AL. * SECTION "N"

## VERDICT FORM

We, the jury, find the defendant, Sebastian Salvatore,

| NOT GUILTY | ✓ GUILTY | as to Count 1 |
|---|---|---|
| NOT GUILTY | ✓ GUILTY | as to Count 2 |
| NOT GUILTY | ✓ GUILTY | as to Count 3 |
| NOT GUILTY | ✓ GUILTY | as to Count 4 |
| NOT GUILTY | ✓ GUILTY | as to Count 5 |
| NOT GUILTY | ✓ GUILTY | as to Count 6 |
| NOT GUILTY | ✓ GUILTY | as to Count 7 |
| NOT GUILTY | ✓ GUILTY | as to Count 8 |
| NOT GUILTY | ✓ GUILTY | as to Count 9 |
| NOT GUILTY | ✓ GUILTY | as to Count 10 |
| NOT GUILTY | ✓ GUILTY | as to Count 11 |
| NOT GUILTY | ✓ GUILTY | as to Count 16 |
| NOT GUILTY | ✓ GUILTY | as to Count 17 |

03578

| | | |
|---|---|---|
| __NOT GUILTY__ | ✓ __GUILTY__ | as to Count 18 |
| __NOT GUILTY__ | ✓ __GUILTY__ | as to Count 19 |
| __NOT GUILTY__ | ✓ __GUILTY__ | as to Count 20 |
| __NOT GUILTY__ | ✓ __GUILTY__ | as to Count 21 |
| __NOT GUILTY__ | ✓ __GUILTY__ | as to Count 22 |
| __NOT GUILTY__ | ✓ __GUILTY__ | as to Count 23 |
| __NOT GUILTY__ | ✓ __GUILTY__ | as to Count 24 |
| __NOT GUILTY__ | ✓ __GUILTY__ | as to Count 25 |
| __NOT GUILTY__ | ✓ __GUILTY__ | as to Count 26 |
| __NOT GUILTY__ | ✓ __GUILTY__ | as to Count 27 |
| __NOT GUILTY__ | ✓ __GUILTY__ | as to Count 28 |
| __NOT GUILTY__ | ✓ __GUILTY__ | as to Count 29 |
| __NOT GUILTY__ | ✓ __GUILTY__ | as to Count 30 |
| __NOT GUILTY__ | ✓ __GUILTY__ | as to Count 31 |
| __NOT GUILTY__ | ✓ __GUILTY__ | as to Count 37 |

#142
_foreperson_

- 2 -

03579

We, the jury, find the defendant, Victor Joseph Tusa, Sr.,

| NOT GUILTY | GUILTY ✓ | as to Count 12 |
| NOT GUILTY | GUILTY ✓ | as to Count 13 |
| NOT GUILTY | GUILTY ✓ | as to Count 14 |
| NOT GUILTY ✓ | GUILTY | as to Count 15 |

We, the jury, find the defendant, Anthony Joseph Tusa, Jr.,

| NOT GUILTY | GUILTY ✓ | as to Count 12 |
| NOT GUILTY | GUILTY ✓ | as to Count 13 |
| NOT GUILTY | GUILTY ✓ | as to Count 14 |
| NOT GUILTY ✓ | GUILTY | as to Count 15 |

New Orleans, Louisiana, this 20 day of Oct, 1995.

_#142_ ~~#145~~
_____
Foreperson

03580

- 3 -

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| UNITED STATES OF AMERICA | * | CRIMINAL ACTION |
|---|---|---|
| VERSUS | * | NO. 94-158 |
| SEBASTIAN SALVATORE, ET AL. | * | SECTION "N" |

### SUPPLEMENTAL VERDICT FORM

If you have found Sebastian Salvatore guilty as to Count 1 of the superseding indictment, record which racketeering acts, if any, you found Sebastian Salvatore committed by checking the "Committed" column if you found that he committed the particular act or the "Not Committed" column if you found that he did not commit the act.

| Racketeering Act | Committed | Not Committed |
|---|---|---|
| **Racketeering Act #1** | | |
| Act 1a (Count 8) | ✓ | |
| Act 1b (Count 5) | ✓ | |
| **Racketeering Act #2** | | |
| Act 2a (Count 11) | ✓ | |
| Act 2b (Count 9) | ✓ | |
| Act 2c (Count 10) | ✓ | |

New Orleans, Louisiana, this 20 day of OCT, 1995.

\_\_\_\_\_#142\_\_\_\_\_
Foreperson

- 4 -

03581

CLERK'S OFFICE
A TRUE COPY

JAN -2 2024

Deputy Clerk, U.S. District Court
Eastern District of Louisiana
New Orleans, LA